935 P.2d 1021

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**William A. CORNELIO, III, Defendant–Appellant.**

**No. 19479.**

Supreme Court of Hawai'i.

April 7, 1997.

Vickie Russell, Wailuku, Maui, for defendant-appellant William A. Cornelio, III.

Artemio C. Baxa and Randall T. Page, Deputy Prosecuting Attorneys, Wailuku, Maui, for plaintiff-appellee State of Hawai'i.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

LEVINSON, Justice.

The defendant-appellee William A. Cornelio, III, appeals from the judgment, guilty conviction, and sentence, entered by the circuit court on October 13, 1995, convicting him, as charged, of terroristic threatening in the first degree in violation of Hawai'i Revised Statutes (HRS) § 707–716(1)(d) (1993) (Count One),[1] place to keep firearm in viola-

---

1. HRS § 707–716 (1993) provides in relevant part:

**Terroristic threatening in the first degree.** (1) A person commits the offense of terroristic

tion of HRS § 134-6(c) (1993) (Count Two),[2] prohibited possession of a firearm in violation of HRS § 134-7(b) (1993) (Count Three),[3] prohibited possession of firearm ammunition in violation of HRS § 134-7(b) (Count Four),[4] and possession of a prohibited fire- arm or device in violation of HRS § 134-8 (1993).[5] Cornelio was sentenced to indeterminate ten-year prison terms as to Counts Two, Three, and Four and indeterminate five-year prison terms as to Counts One and Five. Relying on HRS §§ 706-660.1 (1993)[6]

threatening in the first degree if the person commits terroristic threatening:

. . . .

(d) With the use of a dangerous instrument.

(2) Terroristic threatening in the first degree is a class C felony.

HRS § 707-715 (1993) provides in relevant part:

**Terroristic threatening, defined.** A person commits the offense of terroristic threatening if the person threatens, by word or conduct, to cause bodily injury to another person or serious damage to property of another or to commit a felony:

(1) With the intent to terrorize, or in reckless disregard of the risk of terrorizing, another person[.]

2. HRS § 134-6 (1993 & Supp.1996) provides in relevant part:

**Carrying or use of firearm in the commission of a separate felony; place to keep firearms; loaded firearms; penalty.**

. . . .

(c) Except as provided in sections 134-5 and 134-9, all firearms and ammunition shall be confined to the possessor's place of business, residence, or sojourn; provided that it shall be lawful to carry unloaded firearms or ammunition or both in an enclosed container from the place of purchase to the purchaser's place of business, residence, or sojourn, or between these places . . . and the following: a place of repair; a target range; a licensed dealer's place of business; an organized, scheduled firearms show or exhibit; a place of formal hunter or firearm use training or instruction; or a police station. "Enclosed container" means a rigidly constructed receptacle, or a commercially manufactured gun case, or the equivalent thereof that completely encloses the firearm.

. . . .

(e) . . . Any person violating this section by carrying or possessing a loaded firearm or by carrying or possessing a loaded or unloaded pistol or revolver without a license issued as provided in section 134-9 shall be guilty of a class B felony. . . .

HRS § 134-5 (1993) governs the possession of firearms by "licensed hunters and minors" engaged in "target shooting." HRS § 134-9 (1993 & Supp.1996) governs "[l]icenses to carry" various types of firearms.

3. HRS § 134-7 (1993 & Supp.1996) provides in relevant part:

**Ownership or possession prohibited, when; penalty.**

. . . .

(b) No person who is under indictment for, or has waived indictment for, or has been bound over to the circuit court for, or has been convicted in this State or elsewhere of having committed a felony, or any crime of violence, or an illegal sale of any drug shall own, possess, or control any firearm or ammunition therefor.

. . . .

(h) Any . . . felon violating subsection (b) shall be guilty of a class B felony.

4. See *supra* note 3.

5. HRS § 134-8 (1993) provides in relevant part:

**Ownership, etc., of automatic firearms, silencers, etc., prohibited; penalties.** (a) The manufacture, possession, sale, barter, trade, gift, transfer, or acquisition of any of the following is prohibited: . . . shotguns with barrel lengths less than eighteen inches. . . .

. . . .

(d) Any person violating subsection (a) . . . shall be guilty of a class C felony and shall be imprisoned for a term of five years without probation. . . .

6. HRS § 706-660.1 (1993) provides in relevant part:

**Sentence of imprisonment for use of a firearm, semiautomatic firearm, or automatic firearm in a felony.** (1) A person convicted of a felony, where the person had a firearm in the person's possession or threatened its use or used the firearm while engaged in the commission of the felony, whether the firearm was loaded or not, and whether operable or not, may in addition to the indeterminate term of imprisonment provided for the grade of offense be sentenced to a mandatory minimum term of imprisonment without possibility of parole or probation. . . .

. . . .

(2) A person convicted of a second firearm felony offense as provided in subsection (1) where the person had a firearm in the person's possession or threatened its use or used the firearm while engaged in the commission of the felony, whether the firearm was loaded or not, and whether operable or not, shall in addition to the indeterminate term of imprisonment provided for the grade of offense be sentenced to a mandatory minimum term of imprisonment without possibility of parole or probation the length of which shall be as follows:

and 706–606.5 (1993),[7] the circuit court further imposed mandatory minimum periods of imprisonment, without the possibility of parole, of three years and four months as to Counts One through Four and one year and eight months as to Count Five.

> (a) For murder in the second degree and attempted murder in the second degree—twenty years;
> (b) For a class A felony—thirteen years, four months;
> (c) For a class B felony—six years, eight months; and
> (d) For a class C felony—three years, four months.
>
> The sentence of imprisonment for a second felony offense involving the use of a firearm as provided in this subsection shall not be subject to the procedure for determining a minimum term of imprisonment prescribed under section 706–669; provided further that a person who is imprisoned in a correctional institution as provided in this subsection shall become subject to the parole procedure as prescribed in section 706–670 only upon expiration of the term of mandatory imprisonment fixed under paragraph (a), (b), (c), or (d).

HRS § 706–669 (1993 & Supp.1996) generally governs the "[p]rocedure for determining minimum term[s] of imprisonment." HRS § 706–669(1) (1993) provides:

> When a person has been sentenced to an indeterminate or an extended term of imprisonment, the Hawaii paroling authority shall, as soon as practicable but no later than six months after commitment to the custody of the director of the department of [public safety] hold a hearing, and on the basis of the hearing make an order fixing the minimum term of imprisonment to be served before the prisoner shall become eligible for parole.

(Some brackets in original and some added.) HRS § 706–670 (1993 & Supp.1996) generally governs "parole procedure," "release on parole," "terms of parole," "recommitment," "reparole," and "final unconditional release."

7. HRS § 706–606.5 (1993 & Supp.1996) provides in relevant part:

> **Sentencing of repeat offenders.** (1) Notwithstanding section 706–669 and any other law to the contrary, any person convicted of murder in the second degree, any class A felony, any class B felony, or any of the following class C felonies: ... 707–716 relating to terroristic threatening in the first degree; ... 134–8 relating to ownership, etc., of prohibited weapons ... shall be sentenced to a mandatory minimum period of imprisonment without possibility of parole during such period as follows:
> (a) One prior felony conviction:
> ....

Having determined that Cornelio's inability to control his behavior posed a danger to the community and acting pursuant to HRS § 706–668.5 (1993),[8] the court ordered that all of Cornelio's terms of imprisonment, both with respect to their indeterminate maxi-

> (iii) Where the instant conviction is for a class B felony—three years, four months;
> (iv) Where the instant conviction is for a class C felony offense enumerated above—one year, eight months[.]
> ....
>
> (2) Except as in subsection (3), a person shall not be sentenced to a mandatory minimum period of imprisonment under this section unless the instant felony offense was committed during such period as follows:
> ....
> (d) Within ten years after a prior felony conviction where the prior felony conviction was for a class B felony; .
> (e) Within five years after a prior felony conviction where the prior felony conviction was for a class C felony offense enumerated above[.]
> ....
>
> (4) *The sentencing court may impose the above sentences consecutive to any sentence imposed on the defendant for a prior conviction, but such sentence shall be imposed concurrent to the sentence imposed for the instant conviction.* ...
> ....
> (6) For purposes of this section:
> (a) *Convictions under two or more counts of an indictment or complaint shall be considered a single conviction without regard to when the convictions occur[.]*

(Emphases added.) HRS § 706–606.5(3) (1993) relates to persons previously sentenced to "special terms" for felony convictions as "young adult defendants" under HRS § 706–667 (1993). That subsection is not implicated in this appeal.

8. HRS § 706–668.5 (1993) provides:

> **Multiple sentence of imprisonment.** (1) If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an unexpired term of imprisonment, the terms may run concurrently or consecutively. *Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms run consecutively.* Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms run concurrently.
> (2) The court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider the factors set forth in section 706–606.

mums and their mandatory minimums, would run consecutively. Accordingly, Cornelio was sentenced, cumulatively, to a indeterminate maximum prison term of forty years and—as a precondition of eligibility for parole—a mandatory minimum term of fifteen years.

On appeal, Cornelio argues that the circuit court committed an abuse of discretion or otherwise reversibly erred in sentencing him to consecutive mandatory minimum terms of imprisonment pursuant to HRS §§ 706–606.5 and 706–660.1. (Cornelio does not challenge the consecutive character of the indeterminate maximum terms of his sentence.) For the reasons set forth below, we hold: (1) that HRS § 706–606.5 mandates that adjudications of guilt with respect to multiple counts charged in the same indictment must be treated as a single "conviction" for purposes of sentencing thereunder; (2) that any mandatory minimum terms of imprisonment imposed pursuant to HRS § 706–606.5 in connection with a multicount indictment must be served concurrently with one another; but (3) that a defendant subjected to mandatory minimum terms of imprisonment pursuant to HRS § 706–660.1 may, subject to appellate review for abuse of discretion, be sentenced to serve them consecutively to any mandatory minimum terms imposed pursuant to HRS § 706–606.5. Accordingly, except as to Count One, we vacate Cornelio's October 13, 1995 sentence and remand to the circuit court for resentencing consistent with this opinion.

## I.  BACKGROUND

During the afternoon of November 19, 1994, Cornelio participated in a brawl near the entrance of Kahekili Beach Park on the island of Maui. At some point during the disturbance, Cornelio removed a sawed-off shotgun from the trunk of his car, loaded the weapon, and pointed it at the head of Vahafolau Faleta, another participant in the altercation. In response, and with the assistance of his brother, Faleta (who was evidently a much larger man) disarmed, beat, and pursued Cornelio down the beach to the Royal Lahaina luau grounds. Having successfully nabbed Cornelio there, Faleta pummeled him with his fists and Cornelio's shotgun until a bystander intervened and broke up the fight. A Royal Lahaina security guard then obtained the shotgun from Faleta. After arriving at the scene, the police confiscated the shotgun and determined that its barrel was seventeen and three-quarters inches in length.

At trial, the parties stipulated that Cornelio had previously been convicted of a felony, was aware of his status as a convicted felon, and was further aware, because of that status, that it was unlawful for him to own, possess, or control a firearm or ammunition. The jury ultimately returned guilty verdicts against Cornelio as to all of the offenses charged in the indictment.

Prior to sentencing, the prosecution filed: (1) a motion for the imposition of extended and/or consecutive terms of imprisonment, pursuant to HRS §§ 706–606 (1993),[9] 706–661 (1993),[10] 706–662 (1993),[11] and 706–

---

(Emphasis added.) The text of HRS § 706–606 (1993) appears *infra* at note 9.

9.  HRS § 706–606 provides:
   **Factors to be considered in imposing a sentence.** The court, in determining the particular sentence to be imposed, shall consider:
   (1) The nature and circumstances of the offense and the history and characteristics of the defendant;
   (2) The need for the sentence imposed:
   (a) To reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense;
   (b) To afford adequate deterrence to criminal conduct;
   (c) To protect the public from further crimes of the defendant; and

(d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
   (3) The kinds of sentences available; and
   (4) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

10.  HRS § 706–661 (1993) provides:
   **Sentence of imprisonment for felony; extended terms.** In the cases designated in section 706–662, a person who has been convicted of a felony may be sentenced to an extended indeterminate term of imprisonment. When ordering such a sentence, the court shall im-

668.5;[12] (2) a motion for the imposition of a mandatory minimum period of imprisonment, pursuant to HRS § 706–606.5, *see supra* note 7, of (a) three years and four months in connection with Counts Two, Three, and Four and (b) one year and eight months in connection with Counts One and Five; and (3) an "additional" motion for the imposition of a mandatory period of imprisonment, pursuant to HRS § 706–660.1(2)(d), *see supra* note 6, in connection with Count One. At the hearing on the motions, the prosecution adduced evidence that: (1) Cornelio had been paroled from prison on October 12, 1994, following (a) a conviction, in Cr. No. 87–1557, of rape in the second degree[13] and (b) additional convictions, in Cr. No. 89–0063, of place to keep firearm, prohibited possession of firearm, and criminal property damage in the second degree; and (2) Cornelio's date of conviction in Cr. No. 87–1557 was July 26, 1990; and (3) the conviction of criminal property damage in Cr. No. 89–0063 involved the use of a firearm in the commission of a felony.[14]

At the conclusion of the hearing, the circuit court addressed the following oral remarks to Cornelio in imposing sentence:

> ... I have to look at what you've done in the past in order to determine what's appropriate at the present time as well as what's appropriate punishment for the conduct you engaged in.

And when the court looks at your record, it's apparent you're not able to control your behavior. And you knew you shouldn't have had a gun, and ... somehow you got a sawed-off shotgun driving around ... in your car.

And I know nobody got killed, but I'm amazed that somebody didn't get killed. What I have to conclude from your behavior is that you are a danger to the community. You go around shooting other people's cows. You've got a sawed-off shotgun as soon as you get out of prison.

I'm s[u]re you knew what you were doing was wrong, but you still weren't able to control your behavior, that's the point, and when you can't, you're a danger to the community.

So I have to take you off the streets. Because other people have a right to be safe from that sort of conduct. You know people who send their children to school every day and other people who drive along the highway out in Kaupak[u]lua where you were shooting the animals. They have a right to be away from all that.

You have no right to conduct yourself in that manner, but I want you to understand where we're coming from here—

....

... I hope some day you may be able to reflect upon why things are happening to you and reflect that it's your behavior that

---

pose the maximum length of imprisonment which shall be as follows:

(1) For a class A felony—life;
(2) For a class B felony—twenty years; and
(3) For a class C felony—ten years.

The minimum length of imprisonment shall be determined by the Hawaii paroling authority in accordance with section 706–669.

**11.** HRS § 706–662 (1993) provided in relevant part:

**Criteria for extended terms of imprisonment.** A convicted defendant may be subject to an extended term of imprisonment under section 706–661, if the convicted defendant satisfies one or more of the following criteria:

....

(4) The defendant is a multiple offender whose criminal actions were so extensive that a sentence of imprisonment for an extended term is necessary for protection of the public. The court shall not make such a finding unless:

(a) The defendant is being sentenced for two or more felonies or is already under sentence of imprisonment for felony[.]

The legislature effected cosmetic, nonsubstantive changes to the foregoing language in 1996. 1996 Haw.Sess.L. Act 3, § 1 at 3–4.

**12.** *See supra* note 8.

**13.** Cornelio, then seventeen and a half years old, was discovered having intercourse with a thirteen-year-old girl. Both were patients at the Hawai'i State Hospital on O'ahu at the time. The girl stated during a subsequent interview that Cornelio had removed her clothes and forced her to have sex with him. The family court waived jurisdiction, and Cornelio was tried in the circuit court as an adult. He served six years of his ten-year sentence before being paroled.

**14.** Cornelio's conviction occurred after he was discovered shooting cattle with a .22 caliber rifle;

caused you to be here today. It's not somebody's else [sic].

You're here because you failed to be able to control yourself, and now the court's forced to take you out of circulation so you can't be out there creating dangerous circumstances for other citizens.

So the court is going to impose the following sentence: With regard to count one, the court will impose five years imprisonment. With regard to count two, ten years imprisonment. With regard to count three, ten years imprisonment. Count four, ten years imprisonment. Count five, five years imprisonment.[15]

With respect to count one, the court will find that this is a second firearm offense felony and will impose the three year four months mandatory minimum sentence.[16]

With regard to count two, a mandatory minimum sentence of three years and four months imprisonment will be imposed. With regard to count three, a three years and four months mandatory imprisonment will be imposed. With regard to count four, mandatory imprisonment of three years and four months will be imposed. And with regard to count five[,] mandatory minimum imprisonment of one year and eight months will be imposed.[17]

In addition to this[,] for the reasons that I have stated, I'm going to run all of those ... mandatories as well as the regular [*i.e.,* indeterminate maximum] term[s] of imprisonment[ ] ... consecutively. And

they will also run consecutively with your imprisonment in [Cr. No. 87–1557].[18]

Maybe when you get out, you'll be able to control your behavior. I hope so.

The net effect of the circuit court's sentence was (1) that Cornelio was ordered to serve indeterminate maximum prison terms totaling forty years and mandatory minimum periods of imprisonment totaling fifteen years and (2) that the sentence would be served consecutively to the terms imposed in connection with Cornelio's prior conviction in Cr. No. 87–1557.

On February 9, 1996, Cornelio filed a motion to reduce sentence, asking that the circuit court reconsider allowing all or some of the foregoing mandatory minimum periods of imprisonment to run concurrently. In support of his motion, Cornelio argued that he had voluntarily, and at some risk to himself, provided assistance to the prosecutor's office in another criminal case.[19] The prosecution opposed the motion, claiming that Cornelio posed a danger to the community and citing as evidence the affidavit of Cornelio's trial attorney, who had successfully petitioned the court to withdraw as counsel because Cornelio, angered at his conviction, had threatened the attorney during a telephone conversation. Ultimately, the circuit court denied Cornelio's motion, ruling that the "more important consideration [was] the protection of the community." Following the denial of a subsequent motion to reconsider, Cornelio initiated this timely appeal.

*a bull was wounded and a calf was killed in the incident.*

**15.** By imposing the foregoing indeterminate maximum sentences, the circuit court implicitly denied the prosecution's motion for extended terms of imprisonment pursuant to HRS §§ 706–661 and 706–662. *See supra* notes 10 and 11.

**16.** Accordingly, the circuit court implicitly granted the prosecution's "additional" motion for the imposition of a mandatory period of imprisonment, pursuant to HRS § 706–660.1(2)(d), as to Count One. *See supra* note 6.

**17.** Accordingly, with respect to Counts Two through Five, the circuit court implicitly granted the prosecution's motion for the imposition of a mandatory period of imprisonment pursuant to HRS § 706–606.5. *See supra* note 7.

**18.** Accordingly, the circuit court granted, in part, the prosecution's motion for the imposition of consecutive terms of imprisonment, pursuant to HRS § 706–668.5. *See supra* note 8. By expressly ordering that Cornelio serve his sentence in the present case consecutively with that imposed in Cr. No. 87–1557, the circuit court implicitly ordered that the present sentence be served concurrently with that imposed in Cr. No. 89–0063. *See id.; see also supra* note 14.

**19.** After being approached by another inmate, Gordon Cordeiro, who had attempted to involve Cornelio in the planned murder of a witness expected to testify against Cordeiro, Cornelio reported the communication to police and agreed to testify against Cordeiro. Cornelio was subsequently attacked by one of Cordeiro's associates. He suffered stab wounds, a fractured jaw, and a fractured skull.

## II. STANDARDS OF REVIEW

### A. Statutory Interpretation

■ "The interpretation of a statute is a question of law reviewable *de novo*." *State v. Arceo*, 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996) (quoting *State v. Camara*, 81 Hawai'i 324, 329, 916 P.2d 1225, 1230 (1996) (citations omitted)). *See also State v. Toyomura*, 80 Hawai'i 8, 18, 904 P.2d 893, 903 (1995); *State v. Higa*, 79 Hawai'i 1, 3, 897 P.2d 928, 930, *reconsideration denied*, 79 Hawai'i 341, 902 P.2d 976 (1995); *State v. Nakata*, 76 Hawai'i 360, 365, 878 P.2d 699, 704, *reconsideration denied*, 76 Hawai'i 453, 879 P.2d 558 (1994), *cert. denied*, — U.S. —, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995).

*Gray v. Administrative Dir. of the Court*, 84 Hawai'i 138, 144, 931 P.2d 580, 586 (1997). *See also State v. Soto*, 84 Hawai'i 229, 236, 933 P.2d 66, 73 (1997). "However, 'we construe penal statutes narrowly, considering them in the light of precedent, legislative history, and common sense.'" *Soto*, 84 Hawai'i 229, 236, 933 P.2d 66, 73 (quoting *State v. Gaylord*, 78 Hawai'i 127, 137, 890 P.2d 1167, 1177 (1995)).

### B. Sentencing

■ "The authority of a trial court to select and determine the severity of a penalty is normally undisturbed on review in the absence of an apparent abuse of discretion or unless applicable statutory or constitutional commands have not been observed." *State v. Valera*, 74 Haw. 424, 439, 848 P.2d 376, 383, *reconsideration denied*, 74 Haw. 650, 853 P.2d 542 (1993). In other words,

> while a sentence may be authorized by a constitutionally valid statute, its imposition may be reviewed for plain and manifest abuse of discretion.
>
> Admittedly, the determination of the existence of clear abuse is a matter

which is not free from difficulty[,] and each case in which abuse is claimed must be adjudged according to its own peculiar circumstances. Generally, to constitute an abuse[,] it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

*State v. Kumukau*, 71 Haw. 218, 227–28, 787 P.2d 682, 688 (1990) (citations and internal quotation marks omitted). *See also State v. Murray*, 63 Haw. 12, 25, 621 P.2d 334, 342–43 (1980).

*Gray*, 84 Hawai'i at 146, 931 P.2d at 588 (quoting *Gaylord*, 78 Hawai'i at 143–44, 890 P.2d at 1183–84) (brackets in original) (emphases deleted).

## III. DISCUSSION

The prosecution correctly frames the "central issue" in the present appeal as "whether ... the sentencing court properly ran [Cornelio's] mandatory minimum sentences imposed under HRS § 706–606.5 (Counts 2–5) consecutive[ly] to each other[ ] and consecutive[ly] to the mandatory minimum sentence imposed under HRS § 706–660.1 (Count 1)."[20] Three subsidiary questions flow from the "central issue": (1) does HRS § 706–660.1 empower a sentencing court to order that a mandatory minimum prison term, which has been imposed on a defendant convicted of a "firearm felony offense," *see supra* note 6, be served consecutively to a mandatory minimum period of imprisonment imposed in the same criminal prosecution, but with respect to different counts, under HRS § 706–606.5; (2) does HRS § 706–606.5 empower a sentencing court to impose consecutive mandatory minimum periods of imprisonment on a defendant convicted of multiple felony counts charged in an indictment or complaint; and (3) if the answer to either or both of the foregoing questions is "yes,"

---

20. Cornelio agrees that "[t]he contested issue is whether the mandatory minimum terms of imprisonment imposed under HRS [§ ] 706–606.5 may run consecutive[ly] to each other and to the minimum imposed under [HRS § ] 706–660.1." As such, he does not dispute that he is susceptible to mandatory minimum sentencing under HRS § 706–660.1(2)(d) as to Count One, *see supra* notes 6 and 16, by virtue of a prior felony offense involving the use of a firearm, or to mandatory minimum sentencing under HRS §§ 706–606.5(1)(a)(iii) and (iv), *see supra* notes 7 and 17, by virtue of his status as a "repeat offender." Rather, he only challenges the legality of the consecutive imposition of the mandatory minimums.

did the circuit court commit an abuse of discretion in sentencing Cornelio as it did?

In addressing these three subsidiary questions seriatim, we abide by several established rules of statutory construction. "First, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is obtained primarily from the language contained in the statutes themselves." *Arceo*, 84 Hawai'i at 19, 928 P.2d at 861 (citation, internal quotation marks, and brackets omitted). Second, "we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose." *Gray*, 84 Hawai'i at 148, 931 P.2d at 590 (quoting *Toyomura*, 80 Hawai'i at 18–19, 904 P.2d at 903–04 (citation, internal quotation marks, and brackets omitted)).

In other words, "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it, may be considered to discover its true meaning." HRS § 1–15(2) (1993). Moreover, "[l]aws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another." HRS § 1–16 (1993). *See also Toyomura*, 80 Hawai'i at 19 n. 16, 904 P.2d at 904 n. 16 (citations and internal quotation signals omitted).

*Id.* at 148 n. 15, 931 P.2d at 590 n. 15. And third,

"the legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction, and illogicality." *State v. Griffin*, 83 Hawai'i 105, 108 n. 4, 924 P.2d 1211, 1214 n. 4 (1996) (quoting *State v. Malufau*, 80 Hawai'i 126, 137, 906 P.2d 612, 623 (1995) (citations and internal quotation marks omitted)) (brackets and internal quotation marks omitted). *See also* HRS § 1–15(3) (1993) ("Every construction

which leads to an absurdity shall be rejected.").

*Id.* at 148, 931 P.2d at 590.

### A. Legislative Evolution Of Consecutive Sentencing, In General, Under The Hawai'i Penal Code

In order to facilitate our analysis of HRS §§ 706–660.1 and 706–606.5, it is useful to review the general development of consecutive sentencing as a construct under the Hawai'i Penal Code, HRS Title 37(HPC). This court, in *Gaylord*, traced the history of the consecutive sentencing statute, HRS § 706–668.5, *see supra* note 8, within the greater context of the sentencing scheme set out in HRS ch. 706, in relevant part as follows:

As originally enacted in 1972, the HPC addressed the option of concurrent versus consecutive sentencing in HRS § 706–668. HRS § 706–668 (1972)[ ] provided in relevant part:

**Concurrent and consecutive terms of imprisonment.** (1) Except as provided in subsection (2), when multiple offenses of imprisonment are imposed on a person at the same time, ... the sentence or sentences imposed by the court *shall* be served concurrently.

(Emphasis added.)[21] The commentary to HRS § 706–668 instructed that

subsection (1) deprives the court of the power to mandate that the sentences imposed upon a defendant be served consecutively.... [The HPC] takes the position that the sections providing for extended terms of imprisonment [*see* HRS §§ 706–661 (1985), 706–662 (Supp. 1992), and 706–664 (Supp.1992) ] more adequately and directly address the question of the need for extended incarceration of a multiple offender. To provide for consecutive sentences in addition to extended terms would generally serve no useful purpose....

---

21. HRS § 706–668(2) (1972) provided:

If a person who is imprisoned in a correctional institution is convicted of a crime while he is imprisoned or during an escape from imprisonment, the maximum term of imprisonment for the crime committed during imprisonment or during an escape from imprison-

ment may be added to the portion of the term which remained unserved at the time of the commission of the crime. For purposes of this section, escape is a crime committed during imprisonment.

The subsection was repealed in 1982. 1982 Haw.Sess.L. Act 206, § 1 at 391.

(Footnote omitted.)

. . . .

Effective June 12, 1982, HRS § 706–668 was amended to provide in relevant part that "[w]hen multiple sentences of imprisonment are imposed on a person at the same time . . ., the sentence or sentences imposed by the court *may be served concurrently or consecutively.*" 1982 Haw. Sess.L. Act 206, §§ 1, 3 at 391 (emphasis added). The purpose of the amendment was

> to give judges *discretion* to sentence a person to a term of imprisonment to run concurrently or consecutively.
>
> Presently, the law requires a judge to sentence a person to terms of imprisonment to run concurrently, giving no *discretion* to judges. This requirement negates the deterrent and punishment aspects of sentencing and in so doing fails to deter similar future behavior on the part of the particular individual involved. The [amendment] provides that judges have *discretion* to sentence a person to consecutive terms of imprisonment. Your committee feels that judges will exercise their *discretion* in invoking consecutive terms of imprisonment when appropriate as in instances where the defendant committed multiple or subsequent offenses.

Sen.Conf.Comm.Rep. No. 5–82, in 1982 Senate Journal, at 874 (emphasis added); Hse.Conf.Comm.Rep. No. 6–82, in 1982 House Journal, at 817 (emphasis added). *See* commentary to HRS § 706–668 ("Act 206, Session Laws 1982, amended this section to provide the court discretion to sentence a person to a term of imprisonment to run consecutively or concurrently."); *Kumukau,* 71 Haw. at 225, 787 P.2d at 686 ("Prior to 1982, consecutive sentences were not authorized, but the legislature in amending the law to allow imposition of consecutive sentences stressed that courts must be allowed discretion in determining the appropriate sentence for any particular defendant.").

Thus, as amended, "HRS § 706–668 allow[ed], *without limitation,* the sentencing judge discretion to impose consecutive sentences. whenever he or she [was] imposing multiple sentences." *State v. Tyquiengco,* 6 Haw.App. 409, 413, 723 P.2d 186, 189 (1986) (emphasis added). In other words, the plain language of the 1982 version of HRS § 706–668 provided no guidance to the sentencing court with respect to imposing consecutive sentences in the face of multiple offenses, thereby leaving the sentencing court's discretion virtually unfettered. . . .

. . . .

In 1986, as part of a wholesale revision of the HPC, the legislature filled the void created by the open-ended grant of judicial authority to impose consecutive sentences, as set forth in HRS § 706–668, by taking two significant steps. First, the legislature repealed HRS § 706–668 altogether, 1986 Haw.Sess.L. Act 314, § 46 at 614, and replaced it with HRS § 706–668.5, *id.,* § 45 at 614.[22] Second, the legislature revamped HRS § 706–606 by replacing its former subject matter—sentences for the offense of murder—with universal "[f]actors to be considered in imposing a sentence." *Id.,* § 15 at 599–600.[23]

. . . .

The 1986 enactment of HRS § 706–668.5 and transformation of HRS § 706–606 thus influenced the sentencing discretion of the courts in at least two respects—one general and the other specific. As a general matter, when exercising its broad discretion to impose any particular sentence so as to fit the punishment to the offense as well as to the needs of the individual defendant and the community, the sentencing court became obligated to consider the HRS § 706–606 "factors" as part of its decision making process. But specifically, and by the plain language of HRS § 706–668.5(2)—although subject, pursuant to HRS § 706–668.5(1), to presumptively concurrent sentencing in connection with mul-

**22.** HRS § 706–668.5, as enacted in 1986, has never been amended. *See supra* note 8.

**23.** Likewise, HRS § 706–606, as amended in 1986, has undergone no further revision to date. *See supra* note 9.

tiple prison terms "imposed at the same time"—, the sentencing court became obliged to "consider the factors set forth in [HRS § ] 706–606" when determining whether multiple indeterminate prison terms were to run concurrently of consecutively.

*Gaylord,* 78 Hawai'i at 144, 146–49, 890 P.2d at 1184, 1186–89 (footnote and some citations omitted) (some ellipsis points and brackets in original and some added). For present purposes, and in addition to the two respects in which *Gaylord* observed that the enactment of HRS § 706–668.5, *see supra* note 8, has affected the sentencing discretion of the courts, the imperative contained in HRS § 706–668.5(1) that "[m]ultiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms run consecutively" is particularly noteworthy.

B. · *The Circuit Court Had The Authority To Order That Cornelio Serve A Mandatory Minimum Prison Term Imposed Under HRS § 706–660.1, Upon Conviction Of A "Firearm Felony Offense," Consecutively To An Additional Mandatory Minimum Period Of Imprisonment Imposed On Him As A "Repeat Offender" Under HRS § 706–606.5, Upon Conviction Of A Separate Felony Offense Charged In The Same Indictment.*

■ Cornelio urges on appeal that the five mandatory minimum prison terms to which he was sentenced "may not run consecutive[ly] ... to each other nor to any other sentence imposed for the 'instant conviction.'" Accordingly, by way of appellate

relief, he "requests that the sentencing court's decision in this case be reversed and the mandatory minimums [be] ordered to run concurrent[ly] with each other and consecutive[ly] only to the sentence on his prior conviction in Cr. No. 87–1557." Implicit in Cornelio's prayer is the contention that a sentencing court may not order that a mandatory minimum term of imprisonment imposed under HRS § 706–660.1 be served consecutively to a mandatory minimum period of imprisonment imposed under HRS § 706–606.5 in connection with a separate felony· conviction arising out of a charge contained in the same indictment or complaint.

The propriety of "hybrid" consecutive mandatory minimum sentencing under HRS §§ 706–660.1 and 706–606.5 presents a question of first impression in this jurisdiction. For the reasons discussed below, the application of the rules of statutory construction outlined above and this court's prior case law leave us no choice but to reject Cornelio's · position.

"The legislature has chosen to make the use of a firearm in the commission of a felony the basis for enhanced sentencing for that felony,[24] ... but it clearly has not chosen to impose two mandatory minimum sentences for one use of a gun." *State v. Ambrosio,* 72 Haw. 496, 497–98, 824 P.2d 107, 108 (1992). Thus, by its "clear and unambiguous" language, *id.* at 497, 824 P.2d at 108, HRS § 706–660.1 affords sentencing courts no discretion to impose multiple sentences thereunder, either concurrently or consecutively, based upon the same conduct.

On the other hand, in *Kumukau, supra,* which did not involve "one use of a gun,"

---

24. The purpose of [HRS § 706–660.1] is to set a schedule of mandatory sentences for a person convicted of a felony, where the person had a firearm in his possession and threatened its use or used the firearm while engaged in the commission of a felony. Your committee intends to require the court, in the cases of felonies where a firearm was used, to impose a mandatory term of imprisonment.

Your committee is in agreement that the steadily increasing use of firearms in the commission of criminal activities presents a severe degree of risk of injury to victims of criminal actions. At the present time your committee feels there is a need to re-examine the methods

with which to discourage the use of firearms and institute strong criminal penalties for persons convicted of such criminal activities.

. . . .

Hse.Conf.Comm.Rep. No. 35, in 1976 House Journal, at 1143–44 (emphasis added); *see also* Sen.Conf.Comm.Rep. No. 34, in 1976 Senate Journal, at 883–84.

HRS § 706–660.1 was amended in 1987 so that it applied "whether the firearm was loaded or not, and whether operable or not[.]" 1987 Haw.Sess.L. Act 260, § 1 at 814.

*Garringer v. State,* 80 Hawai'i 327, 332 n. 8, 909 P.2d 1142, 1147 n. 8 (1996) (some brackets in original and some added) (emphases omitted).

we gave a broad interpretation to HRS § 706–660.1, thereby permitting imposition of consecutive mandatory minimum terms of imprisonment notwithstanding the absence of explicit authority for such action under the statute. *See id.* at 223–226, 787 P.2d at 686–87. However, we relied heavily upon HRS § 706–668.5 (Supp.1992), which clearly permits the discretionary imposition of consecutive terms of imprisonment. *Id.* at 224, 787 P.2d at 686.

*Garringer v. State,* 80 Hawaiʻi 327, 332, 909 P.2d 1142, 1147 (1996). Set out in greater detail, the *Kumukau* analysis was as follows:

... Kumukau [does not] contend that HRS § 706–660.1(a)[25] does not apply to him. Section 706–660.1(a) allows a court to impose mandatory minimum terms of imprisonment when certain felonies have been committed with the use of a firearm.

Kumukau objects, however, to the manner in which [HRS] § 706–660.1(a) was applied; namely, that the trial court imposed a mandatory minimum term for each of the counts for which he was convicted, and mandated that these terms be served consecutively. He contends that the imposition of consecutive mandatory minimum terms of imprisonment is ... not authorized by statute....

. . . .

The imposition of consecutive mandatory minimum terms of imprisonment is neither explicitly permitted nor prohibited by the language of HRS § 706–660.1(a). Neither does the legislative history of this statute provide us with clear guidance.

. . . .

This court's primary duty is to ascertain and implement the intention of the legislature. In ascertaining intent, the language of the provision must be read in the context of the entire statute and construed in a manner consistent with its purposes.

"Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another." HRS § 1–16 (1985)[.]

While HRS § 706–660.1(a) is silent as to the issue before us, HRS § 706–668.5 (Supp.1989) clearly permits the imposition of consecutive terms of imprisonment....

Nothing in the language or legislative history of HRS § 706–668.5 convinces this court that the legislature intended that [HRS] § 706–660.1 be an exception from the application of [HRS] § 706–668.5.[26]

. . . .

In construing HRS § 706–660.1(a), we hold that imposition of consecutive mandatory minimum terms of imprisonment, as was imposed in this case, is authorized under HRS § 706–660.1. We do not find the imposition of consecutive sentences to be absurd or unjust in light of Kumukau's commission of multiple offenses with a firearm thereby jeopardizing the safety of numerous persons[.]

*Kumukau,* 71 Haw. at 222–24, 226, 787 P.2d at 685–687 (some citations and quotation marks omitted) (some brackets in original and some added).

Thus, the *Kumukau* analysis—which derives from a contextual reading of the general sentencing scheme delineated in the HPC and a construction of its component provisions that are in pari materia with reference to each other—can be expressed in syllogistic form: (1) HRS § 706–668.5(1) permits a sentencing court to order multiple prison terms—both indeterminate maximums and mandatory minimums—to run consecutively; *see supra* note 8; (2) HRS § 706–660.1 permits a sentencing court to order multiple mandatory minimum prison terms with respect to multiple firearm felony offenses; *see*

**25.** HRS § 706–660.1, as originally enacted in 1976, was amended by (1) 1987 Haw.Sess.L. Act 260, § 1 at 814–15, (2) 1990 Haw.Sess.L. Act 195, § 5 at 422, and (3) 1992 Haw.Sess.L. Act 57, § 1 at 87–89. HRS § 706–660.1(a), as currently expanded, is now codified as HRS § 706–660.1(1) (1993). *See supra* note 6.

**26.** Put differently, with respect to multiple mandatory minimum terms of imprisonment "imposed at the same time," *see* HRS § 706–668.5(1), *supra* at note 8, although HRS § 706–660.1 does not "mandate[ ] that the terms run consecutively," neither, by its express language, does it prohibit the sentencing court from ordering that they do so.

*supra* note 6; therefore, (3) HRS § 706–668.5 permits a sentencing court to order multiple mandatory minimum prison terms imposed under HRS § 706–660.1, in connection with one or more counts of a multicount indictment or complaint, to run consecutively.

In another context, we have noted that "HRS § 706–660.1 is analogous to the 'repeat offender' statute, HRS § 706–606.5 ..., which likewise subjects certain convicted defendants to mandatory minimum terms of imprisonment." *State v. Schroeder*, 76 Hawai'i 517, 530–31, 880 P.2d 192, 205–06 (1994) (footnote omitted). That being the case, and given the applicable rules of statutory construction cited above, the *Kumukau* syllogism can be extended in the following fashion: (1) HRS § 706–668.5 permits a sentencing court to order multiple mandatory minimum prison terms imposed under HRS § 706–660.1 to run consecutively; (2) similarly to HRS § 706–660.1, HRS § 706–606.5 subjects certain convicted defendants to mandatory minimum prison terms; therefore, (3) a sentencing court is permitted to order a mandatory minimum prison term imposed under HRS § 706–660.1, in connection with one or more counts of a multicount indictment or complaint, to run consecutively to a mandatory minimum period of imprisonment imposed in the same matter under HRS § 706–606.5, in connection with a separate count. The logic of the "extended" *Kumukau* syllogism is underscored by the related, but conceptually distinct, public policies underlying the provisions for mandatory minimum prison terms set forth in HRS §§ 706–660.1 and 706–606.5. As we have already noted, the enactment of HRS § 706–660.1 was motivated by "the steadily increasing use of firearms in the commission of criminal activities," which has generated "a severe risk of injury to victims of criminal actions" and a "need to ... discourage the use of firearms and institute strong criminal penalties for persons convicted of such criminal activities." *See supra* note 25. The separate legislative considerations prompting the enactment of HRS § 706–606.5 are discussed *infra* in section III.C. of this opinion.

We therefore hold, consistent with the general applicability of HRS § 706–668.5, that a sentencing court may order that a mandatory minimum term of imprisonment imposed under HRS § 706–660.1 be served consecutively to a mandatory period of imprisonment imposed under HRS § 706–606.5 in connection with a separate felony conviction arising out of a charge contained in the same indictment or complaint.

C. *The Circuit Court Lacked The Authority Under HRS § 706–606.5 To Sentence Cornelio To Consecutive Mandatory Minimum Periods Of Imprisonment In Connection With Counts Two Through Five.*

On the other hand, Cornelio argues that, as the statute is presently configured, "consecutive mandatory minimum periods of incarceration under HRS [§ ] 706–606.5 are not allowed" with respect to convictions under two or more counts of the same indictment or complaint. Accordingly, Cornelio contends that the circuit court erred when it sentenced him to consecutive mandatory minimum prison terms in connection with Counts Two through Five. In light of (1) the legislative evolution of HRS §§ 706–668 and 706–668.5, discussed *supra* in section III.A. of this opinion, (2) the development of HRS § 706–606.5, discussed in this section, and (3) this court's case law, we agree.

The relevant legislative history reveals that the 1976 enactment of HRS § 706–606.5—the Hawai'i repeat offender statute—was motivated by a perception that

the high incidence of repeated offenses by previously convicted persons within the State of Hawaii presents a clear danger to its citizens.... [N]ecessary steps should be taken so that any person convicted for some of the most serious and reprehensible felonies as defined by the [HPC] be sentenced[ ] for each conviction after the first conviction to a mandatory sentence without possibility of parole.

Sen.Conf.Comm.Rep. No. 33–76, in 1976 Senate Journal, at 883; Hse.Conf.Comm.Rep. No. 32, in 1976 House Journal, at 1141.

As originally codified, HRS § 706–606.5 provided:

**Sentencing of repeat offenders.** Notwithstanding section 706–669 and any other law to the contrary, any person convicted under [various enumerated sections of the HPC], who has a prior conviction for the same offense in this or another jurisdiction, shall be sentenced *for each conviction* after the first conviction to a mandatory minimum period of imprisonment without possibility of parole during such period as follows:

(1) Second conviction for the same offense—5 years;

(2) Third conviction for the same offense—10 years.

*The sentencing court may impose the above sentences consecutive to any other sentence then or previously imposed on the defendant.*

1976 Haw.Sess.L. Act 181, § 1 at 338 (emphases added). Thus, "notwithstanding [HRS § 706–668 (1972 & Supp.1979), *see Gaylord,* 78 Hawai'i at 144, 890 P.2d at 1184,] to the contrary," the first manifestation of HRS § 706–606.5 expressly empowered the sentencing court, in its discretion, to order that multiple mandatory minimum prison terms imposed thereunder be served consecutively.[27] After all, by its plain language, "any other sentence *then* . . . imposed on the defendant" (emphasis added), to which the sentencing court was authorized to impose "the above sentences consecutive[ly]," necessarily included mandatory minimum periods of imprisonment *presently* being ordered in connection with convictions resulting from multicount indictments or complaints. Correlatively, "any other sentence . . . *previously* imposed on the defendant" (emphasis added), to which the sentencing court was authorized to impose "the above sentences conse. tive[ly]," necessarily

included mandatory minimum periods of imprisonment ordered in connection with *prior* convictions resulting from multicount indictments or complaints.

Despite the foregoing corollary, and in a related context, this court initially greeted the potential implications of HRS § 706–606.5 with hostility. In *State v. Tavares,* 63 Haw. 509, 630 P.2d 633 (1981), the defendant was convicted of one count of first degree burglary. Because he had been convicted of two counts of burglary on a prior date, the trial court treated the defendant's immediate conviction as his third and sentenced him to a mandatory minimum ten-year prison term pursuant to HRS § 706–606.5. The defendant's sole contention on appeal was "that the trial court erred in sentencing him to a ten-year [mandatory minimum] prison term under section 706–606.5(1)(b)," rather than a five-year mandatory minimum under section 706–606(1)(b). *Id.* at 511, 630 P.2d at 635. Recognizing that "[w]hether [the defendant's] position [was] valid or not [was] a matter of statutory interpretation," *id.,* the *Tavares* court acknowledged the "basic tenet of statutory interpretation . . . that where the language of the statute is plain and unambiguous, construction by the court is inappropriate, and the court is bound to give effect to the law, according to its plain and obvious meaning," *id.* (citation omitted), but invoked the alternative rule that "where the language of the statute is ambiguous or of doubtful meaning, or where literal construction of a statute would produce unjust results, the court may look beyond express language of the statute to ascertain the legislative intent." *Id.* (citation omitted). Having done so, the *Tavares* court analyzed the defendant's point of error as follows:

**27.** In 1979, the legislatur amended HRS § 706–606.5 to authorize repeat offender sentencing of defendants having a prior conviction "for any of the above enumerated offenses," provided that the present conviction occurred "within the time of the maximum sentence of the prior conviction[.]" 1979 Haw.Sess.L. Act 98, § 1 at 190. Section 706–606.5 was further amended in 1980, *inter alia,* to add terroristic threatening in the first degree and ownership or possession of a prohibited firearm or device to the list of enumerated offenses and to allow the sentencing

court to "impose a lesser mandatory minimum sentence . . . than that mandated by this section where the court finds that strong mitigating circumstances warrant such action." 1980 Haw. Sess.L. Act 284, § 1 at 545. The section was additionally amended in 1981 in respects immaterial to the present appeal. 1981 Haw.Sess.L. Act 69, § 1 at 102–03. None of the foregoing amendments modified the discretion of the sentencing court to impose multiple mandatory minimum prison terms consecutively to one another.

In the instant case, sections 706–606.5(1)(a) and (b) provide for increased criminal penalties "for each [felony] conviction after the first conviction." For example, under the statute, a second conviction would bring a mandatory [minimum] five-year term of imprisonment without possibility of parole, while a third conviction would result in [a mandatory minimum] incarceration period of ten years.

Although section 706–606.5(1) is explicit in delineating [mandatory minimum] terms of imprisonment, the statute is ambiguous as to whether one conviction can be considered to have occurred "after" another conviction where both have been rendered simultaneously in the same trial. One possible interpretation is that the legislature intended that each felony offense be committed after conviction for the preceding felony to warrant increased criminal penalties. Under this interpretation, convictions on several counts of an indictment which occur during the same trial would not be totalled up, but treated as "one" prior conviction. Another possible interpretation of the language of the statute is that a conviction on each count of an indictment represents a separate conviction for the purposes of adding up the number of convictions for sentencing.[28] Under this interpretation, each conviction on a separate count would result in an enhanced criminal sentence.

Since the plain language of section 706–606.5(1) is ambiguous as to which of the aforementioned interpretations are accurate, this court may resort to extrinsic aids to construction. Case law interpreting the same or similar statute is always useful in analyzing the purpose and meaning of a legislative enactment where the language is ambiguous. In terms of Hawaii's case law, this court has never addressed the issue of simultaneous prior convictions in the context of section 706–606.5. Therefore, we now turn to the case law of other jurisdictions for guidance.

The rule followed in the majority of jurisdictions is that each successive felony must be committed after the previous felony conviction in order to count towards habitual criminal status. *See e.g., State v. Carlson,* 560 P.2d 26 (Alaska 1977).

. . . .

. . . [T]he [*Carlson*] court reasoned that simultaneous convictions should be treated as "one" conviction in light of the purpose behind habitual offender statutes. As the court pointed out, "[h]abitual criminal statutes are founded on the general principle that persistent offenders should be subject to greater sanctions than those who have been convicted once." *Id.* at 28. Moreover, the court emphasized that the increased sanctions under habitual offender statutes are reserved for criminals who have been given an opportunity to reform following a conviction, but who persist in violations of the law. *Id.* at 28–29. As the court stated, the rationale for this sentencing approach is that a convicted criminal who has not taken advantage of the opportunity to reform and subsequently commits another crime is a worse offender than one who has committed several crimes prior to any conviction. *Id.* at 30. Therefore, the court concluded that, under Alaska's habitual criminal statute, a defendant whose convictions occurred at one trial could not be sentenced to the same prison term as the individual who had been convicted repeatedly in separate trials. *Id.* at 30.

Other jurisdictions have followed the Alaska Supreme Court position. . . .

In addition . . ., the legislative history to section 706–606.5 also appears to be in accord with the majority rule. As is indicated in the conference committee report, the statute was designed to reduce the "high incidence of *repeated offense by previously convicted persons* within the State of Hawaii. . . ." Conf.Comm.Rep. No. 32 on H.B. 2932–76 (1976) (emphasis added). The focus here is on the commission of an offense by a felon who has already been convicted. In other words, it appears that the legislature intended that an individual not be considered a habitual criminal under section 706–606.5 unless he committed

**28.** That this "possible interpretation" was the *only* possible interpretation of HRS § 706–606.5, as it was written at the time, is demonstrated *infra* in this section.

the principal offense after his previous felony conviction.

Given our interpretation of the legislative history and the policy reasons enunciated in *State v. Carlson, supra,* and other similar cases, this court chooses to follow the majority rule and holds that convictions on several counts of an indictment are to be treated as only óne conviction for the purposes of section 706–606.5(1). To the extent that the [defendant's] prior convictions on two counts of burglary constitute only a single conviction under the statute, the trial court should have sentenced [the defendant] to five years under section 706–606.5(1)(a) instead of the ten-year prison term under subsection (1)(b).

*Tavares,* 63 Haw. at 511–15, 630 P.2d at 635–37 (some brackets in original and some added) (emphasis in original) (some citations omitted).

Notwithstanding its attractiveness as a policy matter, the *Tavares* analysis disregarded the very rules of statutory construction that it purported to apply. In particular, the *Tavares* court was able to perceive ambiguity in the plain meaning of HRS § 706–606.5 only by pointedly ignoring the statute's proviso that "[t]he sentencing court may impose the [mandatory minimum prison] sentences [prescribed therein] consecutive to any other sentence *then* ... imposed on the defendant[.]" (Emphasis added.)[29] In the face of the proviso, the *only* "possible interpretation" of the repeat offender statute was that "a conviction on each count of an indictment represents a separate conviction for the purposes of adding up the number of convictions for sentencing," such that "each conviction on a separate count [could] result in an enhanced criminal sentence." *See Tavares,* 63 Haw. at 512, 630 P.2d at 635. Had it therefore adhered to the "basic tenet of statutory interpretation" that "where the language of [a] statute is plain and unambiguous, construction by the court is inappropriate, and the court is bound to give effect to the law, according to its plain and obvious meaning," *see id.* at 511, 630 P.2d at 635, the *Tavares* court could not have "look[ed] beyond [the] express language of the statute ... to the case law of other jurisdictions," as "extrinsic aids to [its] construction," 'for the purpose of holding that "convictions on several counts of an indictment are to be treated as only one conviction for the purposes of section 706–606.5(1)." *See id.* at 511–12, 515, 630 P.2d at 635–37.[30]

**29.** By contrast, the Alaska "habitual criminal" statute, AS 12.55.050, which the Alaska Supreme court construed in *Carlson,* apparently provided in its entirety:

**Increased punishment for persons convicted of more than one felony.** A person convicted of a felony in this state who has been previously convicted of a felony in this state or elsewhere, if the same crime elsewhere would constitute a felony under Alaska law, is punishable as follows:

(1) If the person is convicted of a felony which would be punishable by imprisonment for a term less than his natural life, and has previously been convicted of one felony, then he is punishable by imprisonment for not less than the minimum nor more than twice the longest term prescribed for the felony of which that person is convicted.

(2) If the person has previously been convicted of two felonies, then he is punishable by imprisonment for not less than the minimum nor more than twice the longest term prescribed herein for a second conviction of felony.

(3) *If the person has previously been convicted of three or more felonies, then on the fourth conviction he shall be adjudged an habitual criminal, and is punishable by imprisonment* for not less than 20 years nor more than the remainder of his natural life.

*Carlson,* 560 P.2d at 27 n. 2 (emphasis added). Thus, it would seem that the Alaska statute did not contain an analogue of the proviso in HRS § 706–606.5 that "[t]he sentencing court may impose the above sentences consecutive to any other sentence then ... imposed on the defendant[.]"

**30.** It is not surprising, then, that' this court limited the application of *Tavares* to its particular facts in subsequent decisions. *See, e.g., State v. Rodrigues,* 68 Haw. 124, 133, 706 P.2d 1293, 1299 (1985) ("[I]n *Tavares* ..., we reversed the trial judge because the two convictions serving as grounds for sentence enhancement stemmed from two offenses committed on the same day, charged in the same indictment, and for which findings of guilt were rendered simultaneously in the same trial. Here, the two convictions [the defendant] would have us consider as one were for offenses committed a month apart, charged in separate indictments, and for which findings of guilt were entered in separate proceedings. *State v. Tavares* is not controlling, for the simultaneousness upon which our ruling was premised is absent. We see no basis for a ruling that the judgments entered on [the same day] only

In any event, the legislature evidently deemed the *Tavares* holding to be desirable, inasmuch as it amended HRS § 706–606.5 in 1986, "as part of a wholesale revision of the HPC," *see Gaylord,* 78 Hawai'i at 147, 890 P.2d at 1187, *inter alia,* to codify the *Tavares* result as part of a new subsection (4). *See generally* 1986 Haw.Sess.L. Act 314, § 17 at 600–02 [hereinafter, Act 314].[31] Act 314, section 17 transformed what had previous been subsection (3) into a new subsection (4), which provided:

*(4)* **The sentencing court may impose the above sentences consecutive to any** [other] **sentence** [then or previously] **imposed on the defendant** [or] *for a prior conviction, but such sentence shall be imposed concurrent to the sentence imposed for the instant conviction. The court* may impose a lesser mandatory minimum [sentence] *period of imprisonment* without possibility of parole than that mandated by this section where the court finds

that strong mitigating circumstances warrant such action. Strong mitigating circumstances shall include, but will not be limited to, the provisions of section 706–621. The court shall provide a written opinion [or] *stating* its reasons for imposing the lesser sentence.

> *For purposes of this section:*
>
> *(a) A prior felony conviction is a conviction for a felony offense which was committed after a previous felony conviction;* [ [32] ]
>
> *(b) Conviction under two or more counts of an indictment or complaint shall be considered a single conviction without regard to when the convictions occur;*
>
> *(c) A prior conviction in this or another jurisdiction shall be deemed a felony conviction if it was punishable by a sentence of death or of imprisonment in excess of one year;*

resulted in a single conviction for purposes of sentence enhancement pursuant to the repeat offender law.") (Citation omitted.); *State v. Cabral,* 71 Haw. 153, 157, 785 P.2d 1314, 1316 (1990) (relying on *Rodrigues* in ruling that "[t]he fact that sentencing was imposed on the same day in [two separate criminal matters], and that [the] Defendant's guilty pleas in both of these cases were previously entered at the same hearing, did not therefore 'merge' these two separate convictions into a single prior conviction under the repeat offender sentencing statute").

31. The 1986 amendment also substantially reorganized HRS § 706–606.5. *See* Act 314, § 17 at 600–02. In addition to the changes discussed in the body of this opinion, Act 314, section 17 amended the statute, among other things, to (1) make it applicable to "any person convicted of *any* class A felony [and] *any* class B felony" (emphases added), (2) add criminal attempts to the list of offenses that were subject to repeat offender sentencing, (3) make special provision for repeat offender sentencing of persons having "[t]hree or more prior felony convictions," and (4) escalate the duration of the prescribed mandatory minimum period of imprisonment as a function, not only of the number of the defendant's "prior felony convictions," but also of the class of the felony of which the defendant had been convicted. These changes were "intended to provide sentencing of repeat offenders which [was] commensurate to the severity of the crime committed.... The period of time during which a person [was] considered to have a prior felony conviction [was also] made commensurate to the seriousness of the prior felony offense." Sen.

Conf.Comm.Rep. No. 51–86, in 1986 Senate Journal, at 748–49; Hse.Conf.Comm.Rep. No. 51–86, in 1986 House Journal, at 938.

The list of offenses to which HRS § 706–606.5 applied was augmented in 1987 to include, *inter alia,* the various forms of murder. *See* 1987 Haw.Sess.L. (Vol. I) Act 181, § 3 at 407–09. An additional class C felony was added to the list in 1990. *See* 1990 Haw.Sess.L. Act 28, § 2 at 34. In 1996, the subsections of HRS § 706–606.5 were renumbered to create the present configuration, *see supra* note 7, another class C felony was added to the enumerated list of applicable offenses, and a new subsection—HRS § 706–606(5)—was added to provide that a "person who is imprisoned in a correctional institution pursuant to subsection (1) shall not be paroled prior to the expiration of the mandatory minimum term of imprisonment imposed pursuant to subsection (1)." *See* 1996 Haw.Sess.L. Act 87, § 1 at 119–21.

32. The meaning of "prior felony conviction," as defined in HRS § 706–606.5(4)(a) (Supp.1986), is impenetrable by any rule of statutory construction. Obviously aware of the "Frankenstein's monster" that it had created, the legislature repealed HRS § 706–606.5(4)(a) (Supp.1986) the following year, *see* 1987 Haw.Sess.L. (Vol. I) Act 181, § 3 at 409, redesignated the surviving provisions of subsection (4), and explained that the amendment "by deletion ... clarifies the present law which defines a 'prior' felony as one felony *after* a 'previous' felony." Sen.Stand.Comm.Rep. No. 1130, in 1987 Senate Journal, at 1393 (emphasis in original).

*(d) A conviction occurs on the date judgment is entered.*

HRS § 706–606.5(4) (Supp.1986) (underscored language added by amendment) (bracketed language deleted by amendment) (highlighted emphasis added).

Thus, among its omnibus provisions, Act 314 effected three key changes to the Hawai'i sentencing laws that have a direct bearing on the propriety of the four consecutive mandatory minimum terms of imprisonment that the circuit court imposed on Cornelio in connection with Counts Two through Five. First, as we noted in section III.A. of this opinion, Act 314, section 45 enacted HRS § 706–668.5, which provides in relevant part that "[m]ultiple terms of imprisonment imposed at the *same* time run *concurrently* unless the court orders[—subject to 'the factors set forth in HRS § 706–606,' *see* HRS § 706–668.5(2)—] or the statute mandates that the terms run consecutively" and that "[m]ultiple terms of imprisonment imposed at *different* times run *consecutively* unless the court orders that the terms run concurrently." (Emphases added.) *See supra* note 8. In so doing, and by its plain language, *see Arceo*, 84 Hawai'i at 19, 928 P.2d at 861, Act 314 established a presumptive legislative preference for *concurrent* sentencing with respect to "multiple terms of imprisonment imposed at the same time." *See Gaylord*, 78 Hawai'i at 149, 890 P.2d at 1189 (noting that HRS § 706–668.5(1) subjects defendants "to presumptively concurrent sentencing in connection with multiple prison terms 'imposed at the same time' ").

Second, Act 314, section 17 deleted from the repeat offender statute—HRS § 706–606.5—the provision that "[t]he sentencing court *may* impose [any prescribed mandatory minimum prison sentence] consecutive to any other sentence then ... imposed on the defendant" (emphasis added) and substituted in its place the provision that "[t]he sentencing court *may* impose [any prescribed mandatory minimum prison sentence] consecutive to any sentence imposed on a defendant for a prior conviction, but such sentence *shall* be imposed concurrent to the sentence imposed

for the instant conviction." (Emphases added.)

In the past, this court has subscribed to the proposition that, where the verbs "shall" and "may" are used in the same statute, especially where they are used in close juxtaposition, we infer that the legislature realized the difference in meaning and intended that the verbs used should carry with them their ordinary meanings. Not surprisingly, we have therefore construed the close proximity of the contrasting verbs "may" and "shall" to require a *mandatory* effect for the term "shall." Thus ..., the converse would seem to follow, namely, that the close proximity of the contrasting verbs "may" and "shall" requires a *non-mandatory, i.e.,* a discretionary, construction of the term "may."

*Gray*, 84 Hawai'i at 149, 931 P.2d at 591 (citations, brackets, and some internal quotation marks omitted) (emphases in original); *see also State v. Brantley*, 84 Hawai'i 112, 123, 929 P.2d 1362, 1373 (App.1996) ("[W]hen a statute contains both mandatory and directory verbs such as 'shall' and 'may' in close juxtaposition, the court is to infer that the legislature intended that the verbs should carry with them their ordinary meanings."). Accordingly, the plain language of HRS § 706–606.5(4), *see supra* note 7, manifests a clear legislative intent that a sentencing court have the discretion to order that mandatory minimum periods of imprisonment imposed on repeat offenders run *consecutively* to any mandatory minimums imposed "for a prior conviction"; conversely, the plain language of the statute manifests an equally clear legislative intent that a sentencing court be required to order that any such mandatory minimums run *concurrently* with respect to "the instant conviction."

Third, Act 314, section 17 inserted into HRS § 706–606.5(4)(b) (subsequently renumbered HRS § 706–606.5(6)(a), *see supra* notes 7 and 31) the provision that, for purposes of the repeat offender statute, "[c]onvictions under two or more counts of an indictment or complaint shall be considered a single conviction without regard to when the convictions occur."[33] Inasmuch as mul-

---

**33.** Inasmuch as (1) the foregoing provision ap-

plies "for purposes of [HRS § 706–606.5]" only,

tiple mandatory minimum periods of imprisonment imposed in connection with multiple convictions arising out of a single indictment or complaint are considered "a single conviction" for purposes of the repeat offender statute, we believe that to construe the statute so as to permit the imposition of consecutive mandatory minimum periods of imprisonment in connection with a single multicount indictment or complaint would do violence to "the reason and spirit of the law[ ] and the cause which induced the legislature to enact it." *See Gray*, 84 Hawai'i at 148 n. 15, 931 P.2d at 590 n. 15; HRS § 1–15(2).

Based on the foregoing analysis, we hold that HRS § 706–606.5 divests a sentencing court of the authority to impose consecutive mandatory minimum periods of imprisonment on a defendant convicted of multiple felony counts charged in the same indictment or complaint. Accordingly, we further hold that the circuit court "clearly ... disregarded rules or principles of law to [Cornelio's] substantial detriment" and therefore committed a "plain and manifest abuse of discretion," *see Gray*, 84 Hawai'i at 146, 931 P.2d at 588, in sentencing Cornelio to consecutive mandatory minimum prison terms in connection with Counts Two through Five.

D. *The Circuit Court Did Not Abuse Its Discretion In Ordering Cornelio To Serve A Mandatory Minimum Period Of Imprisonment In Connection With Count One, Pursuant To HRS § 706–660.1, Consecutively To A Mandatory Minimum Prison Term In Connection With The Remaining Counts, Pursuant To HRS § 706–606.5.*

Noting that, "[i]n this case, the mandatory minimum period of imprisonment is 18 [sic—actually fifteen] years before [he]

may be considered for release," Cornelio asserts, as his final point of error, that "[s]uch a period is unreasonable considering the nature of the offense" and, as such, constituted an abuse of the circuit court's sentencing discretion. In light of our holding in section III.C. of this opinion, we need not reach the issue as framed because, at most, Cornelio's mandatory minimum prison terms, if served consecutively, could aggregate to six years and eight months—three years and four months pursuant to HRS § 706–660.1(2)(d), *see supra* note 6, and a like period pursuant to HRS § 706–606.5(1)(a), *see supra* note 7. Thus, the question becomes whether, on the record before us, consecutive mandatory minimums totaling six years and eight months constituted an abuse of sentencing discretion. For the reasons discussed below, we do not believe that such a consecutive sentence "clearly exceed[s] the bounds of reason," *see Gray*, 84 Hawai'i at 146, 931 P.2d at 588, thereby reflecting a sentencing abuse.

In *State v. Loa*, 83 Hawai'i 335, 926 P.2d 1258, *reconsideration denied*, 83 Hawai'i 545, 928 P.2d 39 (1996), we recently considered the question whether the trial court committed a plain and manifest abuse of discretion in imposing seven consecutive indeterminate terms of life imprisonment with the possibility of parole plus two consecutive indeterminate twenty-year prison terms.[34] Affirming the defendant's sentence, we retraced the history of the consecutive sentencing statute, HRS § 706–668.5, and quoted *Gaylord*, 78 Hawai'i at 154, 890 P.2d at 1194, for the proposition that, subject to the constraints of HRS § 706–606,

consecutive prison sentences, pursuant to HRS § 706–668.5, may properly be imposed only to achieve retributive, incapacitative, and deterrent objectives. Thus, at

see supra note 7, (2) HRS § 706–660.1 lacks similar language, *see supra* note 6, and (3) the two statutes are "analogous" to the extent that each "subjects certain convicted defendants to mandatory minimum terms of imprisonment," *see Schroeder*, 76 Hawai'i at 530–31, 880 P.2d at 205–06, application of the maxim of *expressio unius est exclusio alterius* lends further support for our holding enunciated *supra* in section III.B. *See Arceo*, 84 Hawai'i at 30 n. 38, 928 P.2d at 872 n. 38; *International Sav. and Loan Ass'n v.*

*Wiig*, 82 Hawai'i 197, 200–01, 921 P.2d 117, 120–21 (1996).

**34.** As in cases of sentences comprised of consecutive indeterminate maximum terms of imprisonment, sentences involving consecutive mandatory minimum periods of imprisonment are subject to appellate review for plain and manifest abuse of discretion. *See Kumukau*, 71 Haw. at 227, 787 P.2d at 688.

the very least, (1) the sentencing court must expressly intend that the defendant's period of incarceration be prolonged by virtue of the consecutive character of the prison terms (the retributive goal), and (2) the sentence must embody the forward-looking aim of future crime reduction or prevention (the deterrent goal).

*Loa,* 83 Hawai'i at 356, 926 P.2d at 1279 (emphases deleted).

As we have indicated in section I. of this opinion, the circuit court voiced the following thought process at Cornelio's sentencing hearing:

> ... [W]hen the court looks at your record, it's apparent you're not able to control your behavior. And you knew you shouldn't have had a gun, and ... somehow you got a sawed-off shotgun driving around ... in your car.

> And I know nobody got killed, but I'm amazed that somebody didn't get killed. What I have to conclude from your behavior is that you are a danger to the community....

> ... [Y]ou ... weren't able to control your behavior, that's the point, and when you can't, you're a danger to the community.

> So I have to take you off the streets. Because other people have a right to be safe from that sort of conduct....

> ....

> You're here because you failed to be able to control yourself, and now the court's forced to take you out of circulation so you can't be out there creating dangerous circumstances for other citizens.

> ....

> Maybe when you get out, you'll be able to control your behavior. I hope so.

From the foregoing remarks, it is manifest that the retributive, incapacitative, and deterrent goals were paramount in the circuit court's determination of Cornelio's sentence in this matter.

On the record before us, and mindful of the related, but conceptually distinct, policies underlying HRS §§ 706–606.5 and 706–660.1—the necessity that "steps ... be taken" in the face of the "clear danger to ... citizens" posed by "the high incidence of repeated offenses" in the case of the former, *see* Sen.Conf.Comm.Rep. No. 33–76, in 1976 Senate Journal, at 883; Hse. Conf.Comm.Rep. No. 32, in 1976 House Journal, at 1141, and the "need to re-examine the methods with which to discourage the use of firearms and institute strong criminal penalties for persons convicted of such criminal activities" in the case of the latter, *see supra* note 24—, we hold that the "trial court did not clearly exceed the bounds of reason," *see Loa,* 83 Hawai'i at 356, 926 P.2d at 1279, and therefore did not abuse its discretion in undertaking to impose consecutive mandatory minimum periods of imprisonment, pursuant to HRS §§ 706–606.5 and 706–660.1, in connection with Cornelio's convictions arising out of separate counts of the same indictment.

## IV. CONCLUSION

For the foregoing reasons, we affirm the sentence of the circuit court with respect to Count One of the indictment. However, we vacate Cornelio's sentence with respect to Counts Two through Five and remand to the circuit court for resentencing as to those counts in a manner consistent with this opinion.