**UNITED STATES of America,**
**Appellant,**

v.

**Nicholas J. CICCO; Vincent Tabbachino.**

**No. 90–5947.**

United States Court of Appeals,
Third Circuit.

Argued April 16, 1991.

Decided July 12, 1991.

**442**

Vacated and remanded with instructions.

Michael Chertoff, U.S. Atty., Edna Ball Axelrod (argued), Chief, Appeals Div., U.S. Attys. Office, Newark, N.J., for appellant.

John J. Bruno, Jr. (argued), Bruno & Ferraro, Rutherford, N.J., for Appellee Nicholas J. Cicco.

Anthony A. Kress (argued), Hackensack, N.J., for appellee Vincent Tabbachino.

Before STAPLETON, GREENBERG and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

STAPLETON, Circuit Judge:

### I.

The United States appeals from an order acquitting the defendants on two counts of a multicount indictment after a jury had returned guilty verdicts as to those counts. The district court ruled that, as applied to the indictment before it, 18 U.S.C. § 666 was ambiguous. It applied the rule of lenity and concluded that defendants' conduct was outside the ambit of the statute. Alternatively, the court ruled that the government's interpretation of § 666 was unconstitutionally vague. We have jurisdiction over the government's appeal from the district court's order,[1] *see* 18 U.S.C. § 3731, and will apply plenary review to the court's interpretation of the statute. *See Chrysler Credit Corp. v. First National Bank and Trust Co.,* 746 F.2d 200, 202 (3d Cir.1984).

### II.

At all relevant times, the defendants were municipal officials in Guttenberg, New Jersey. Nicholas J. Cicco ("Cicco") was mayor and Vincent Tabbachino ("Tabbachino") was a member of the Board of Council (the "town council"). The government charged the defendants with corruptly soliciting political services and loyalty in

---

1. The Government can appeal from a district court judgment of acquittal entered after a jury's guilty verdict. "Although not expressly enumerated in 18 U.S.C. § 3731, judgments of acquittal are appealable under that section." *United States v. Coleman,* 811 F.2d 804, 805 (3d Cir.1987). The district court denied the defendants' motions for acquittal on other counts of the indictment. The defendants are currently awaiting sentencing for those convictions.

Since a defendant can only appeal from a final order of the district court, and "[f]inal judgment in a criminal case means sentence," *Berman v. United States,* 302 U.S. 211, 212, 58 S.Ct. 164, 166, 82 L.Ed. 204 (1937), the convictions on the other counts are not presently before us. Thus, our present review is limited to the portions of the district court's order granting the defendants' motions with respect to the counts based on 18 U.S.C. § 666.

exchange for municipal jobs as Special Police Officers ("Specials"). Specials are part time municipal employees who assist the police department and regular officers in the discharge of their duties. The town council appoints Specials to one year terms and the police department assigns shifts weekly.

In Guttenberg, Democratic candidates traditionally face little opposition in general elections. In the 1988 election, however, the Republican, Andy Juncosa ("Juncosa"), mounted a strong but ultimately unsuccessful challenge for a seat on the town council. Michael Postorino ("Postorino") and Francisco Marrero ("Marrero") were Specials in Guttenberg during 1988. Both men were friendly with Juncosa and neither actively participated in the November 1988 elections. Shortly after the elections, police department officials told Postorino and Marrero that no work was available until they spoke with the Mayor Cicco.

Marrero spoke to Cicco in late November of 1988. Cicco explained that members of the town council were upset with Marrero because he had not actively supported the town's Democratic organization in the recent elections. He had not hung signs, solicited votes or attended organizational meetings. As a result of the town council's displeasure, Cicco told Marrero, he could not work as a Special. Cicco suggested that Marrero give Cicco an opportunity to discuss the matter with the town council. Postorino came to understand that he was being denied work for the same reason.

Postorino and Marrero then conferred with their friend (and former Republican candidate) Juncosa. Juncosa arranged a meeting with the Hudson County, New Jersey, Prosecutor's office. As a result of that meeting, Postorino and Marrero agreed to secretly tape their conversations with Cicco and Tabbachino. The transcripts of those conversations reveal that Marrero and Postorino were not assigned

work for several reasons: municipal cutbacks, their lack of active support in the November election, and reports that Postorino had threatened a Democratic campaign worker. In January 1989, neither Postorino nor Marrero were reappointed as Specials.

### III.

The government filed a twelve count indictment against Cicco and Tabbachino charging generally that the defendants coerced municipal employees to work for Guttenberg's Democratic party as a condition of employment.[2] Counts four and five, the subject of this appeal, charged violations of 18 U.S.C. § 666(a)(1)(B). The statute provides as follows:

§ 666. Theft or bribery concerning programs receiving Federal funds.

(a) Whoever, if the circumstance described in subsection (b) of this section exists—

(1) being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof—

\*   \*   \*   \*   \*   \*

(B) corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more;

.    .    .    .    .

shall be fined under this title, imprisoned not more than 10 years, or both.

(b) The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.

---

**2.** In addition to the counts at issue in this appeal, the government charged the defendants with violating 18 U.S.C. § 601 and obtained convictions. As will be explained in section IV.C.

of this opinion, we believe that Congress intended § 601 to apply to cases like the one presently before us.

The district court observed, and the government agrees, that the following elements comprise a violation of § 666(a)(1)(B): 1) corrupt solicitation; 2) of anything of value; 3) with the intention of being influenced in connection with any transaction of a local government or organization receiving at least $10,000 in federal funds annually; 4) where the transaction involves anything of value of $5,000 or more.

The government argues that it has proven each element of a § 666 violation. Under the government's theory, the defendants corruptly solicited political services and loyalty from municipal employees and did so intending to be influenced in the distribution of municipal jobs. Guttenberg annually receives more than $10,000 in federal funds and the jobs were worth more than $5,000 per year.

Following the jury's guilty verdict, the district court ruled that "[v]iewed in the light most favorable to the government, the evidence at the close of the government's case revealed an implied promise by the defendants that the employees would be allowed to retain their jobs or might be reinstated if the employees gave political loyalty and services to the defendants' party." Slip. op. at 16. Nevertheless, the district court entered a judgment of acquittal for two reasons. First, the district court believed that Congress did not intend § 666 to apply to the defendants' actions. Second, the district court found that the government's interpretation of the statute was unconstitutionally vague and deprived the defendants of fair notice.

Because we agree that § 666 does not apply to this case, we do not reach the constitutional issues raised in the district court's opinion.

## IV.

The Supreme Court has instructed that "when assessing the reach of a federal criminal statute, we must pay close heed to language, legislative history, and purpose in order strictly to determine the scope of the conduct the enactment forbids." *Dowling v. United States,* 473 U.S. 207, 213, 105 S.Ct. 3127, 3131, 87 L.Ed.2d 152 (1985).

### A. The Text of § 666

We begin by acknowledging that a solicitation of specific election day services with municipal employment as the *quid pro quo,* might come within the literal language of § 666. It must also be recognized, however, that the language the drafters of § 666 chose is also consistent with an intention of focusing solely on offenses involving theft or bribery, the crimes identified in the title of that section. Accordingly, we agree with the district court that the text of § 666 is ambiguous.

We also agree that if § 666 is read as broadly as the government reads it, its boundaries are difficult to limn. If solicitation of what the government characterizes as "party loyalty" is covered, for example, those boundaries become vague indeed. Because of these uncertainties we have no recourse but to turn to the legislative history and purpose of § 666. Fortunately, we find these sources quite helpful.

### B. The Legislative History and Purpose of § 666

■ Congress enacted § 666 as part of the Comprehensive Crime Bill of 1984. The provision was "designed to create new offenses to augment the ability of the United States to vindicate significant acts of theft, fraud, and bribery involving Federal monies which are disbursed to private organizations or State and local governments pursuant to a Federal program." S.Rep. No. 225 at 369, 98th Cong., 2d Sess., *reprinted in* 1984 U.S.Code Cong. & Admin. News 3182, 3510. The Senate Report expressly notes that Congress wished the new statutory provision to be interpreted "consistent with the purpose of this section to protect the integrity of the vast sums of money distributed through Federal programs from theft, fraud and undue influence by bribery." *Id.* at 370, 1984 U.S. Code Cong. & Admin. News at 3511.

We quote extensively from the legislative history to illustrate that Congress in-

tended § 666 to redress particular deficiencies in identified existing statutes:

With respect to theft, 18 U.S.C. 665 makes theft or embezzlement by an officer or employee of an agency receiving assistance under the Job Training Partnership Act a Federal offense. However, there is no statute of general applicability in this area, and thefts from other organizations or governments receiving Federal financial assistance can be prosecuted under the general theft of Federal property statute, 18 U.S.C. 641, only if it can be shown that the property stolen is property of the United States. In many cases, such prosecution is impossible because title has passed to the recipient before the property is stolen, or the funds are so commingled that the Federal character of the funds cannot be shown. This situation gives rise to a serious gap in the law, since even though title to the monies may have passed, the Federal Government clearly retains a strong interest in assuring the integrity of such program funds. Indeed, a recurring problem in this area (as well as in the related area of bribery of the administrators of such funds) has been that State and local prosecutors are often unwilling to commit their limited resources to pursue such thefts, deeming the United States the principal party aggrieved.

*Id.* Thus, Congress enacted § 666, in part, to augment 18 U.S.C. §§ 641 and 665. The goal was to protect federal funds by authorizing federal prosecution of thefts and embezzlement from programs receiving substantial federal support even if the property involved no longer belonged to the federal government.

The legislative history reveals only one other purpose for § 666: Congress intended to enlarge and clarify the class of persons subject to the federal bribery laws. The primary statute then in effect, 18 U.S.C. § 201, applied only to cases involving the bribery of a federal "public official." The Senate Report makes reference to that section and notes that, "[t]he courts of appeals have divided on the question whether a person employed by a private organization receiving Federal monies pursuant to a program is a 'public official' for purposes of section 201." S.Rep. No. 225 at 369, 98th Cong., 2d Sess., *reprinted in* 1984 U.S.Code Cong. & Admin. News 3182, 3510.

The legislative history makes specific reference to *United States v. Loschiavo,* 531 F.2d 659 (2d Cir.1976). There, the government charged Loschiavo with bribing a public official in violation of 18 U.S.C. § 201. Loschiavo had paid off Morales, the Deputy Director of the Harlem–East Harlem Office of the New York Model Cities Administration, in order to obtain from Model Cities a lease on a building he owned. The evidence showed that the federal government paid 80 per cent of Morales' salary and 100 per cent of the costs of program he was administering. *Id.* at 660. A jury found Loschiavo guilty of bribing a public official.

The court of appeals vacated the conviction. The court concluded that Morales was not a federal "public official" within the meaning of the statute because "he was not acting 'under or by authority of any ... department, agency or branch of [the federal] Government.'" *Id.* at 661 (*quoting United States v. Del Toro,* 513 F.2d 656 (2d Cir.), *cert. denied,* 423 U.S. 826, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975)). The court explained

The type of public project involved, or the amount of federal funding entailed, may be important in applying other parts of the statute, ... but for the purpose of deciding Morales' status as a "public official" under § 201(a), it is not the aspects of the particular project which are of the greatest significance, but the character and attributes of his employment relationship, if any, with the federal government.

*Id.*

The legislative history makes clear that the reason Congress enacted the bribery provisions of § 666 was to ensure that federal bribery laws applied to officials like Morales. It is thus apparent that the crimes Congress targeted when it created § 666 are simply different in kind than

those alleged in the case at bar. Accordingly, we conclude from the legislative history that Cicco and Tabbachino did not violate that section.

### C. *18 U.S.C. § 601*

■ Brief mention of 18 U.S.C. § 601 bolsters our conclusion that Congress did not intend § 666 to apply to the present case. Section 601 is a criminal statute that clearly does cover the activities alleged in this case. Counts 10 and 11 were based on § 601 and the government obtained convictions against Cicco and Tabbachino on those counts.[3] Section 601, in effect when Congress enacted § 666, provides as follows:

> § 601. Deprivation of employment or other benefit for political contribution. (a) Whoever, directly or indirectly, knowingly causes or attempts to cause any person to make a contribution of a thing of value (including services) for the benefit of any candidate or any political party, by means of the denial or deprivation, or the threat of the denial or deprivation, of—
>
>> (1) any employment, position, or work in or for any agency or other entity of the Government of the United States, a State, or a political subdivision of a State, or any compensation or benefit of such employment, position, or work; or
>>
>> (2) any payment or benefit of a program of the United States, a State, or a political subdivision of a State;
>
> if such employment, position, work, compensation, payment, or benefit is provided for or made possible in whole or in part by an Act of Congress, shall be fined not more than $10,000, or imprisoned not more than one year, or both.

The statute addresses the sort of "political patronage harassments" alleged here. S.Rep. No. 1245, 94th Cong., 2d Sess. 2, *reprinted in* 1976 U.S.Code Cong. & Admin. News 2883, 2884. The accompanying legislative history reveals that § 601 is "di-

rected at protecting federally-funded employment from partisan favoritism...." *Id.*

More significant than the mere existence of § 601, however, is the fact that § 666's legislative history makes no mention of § 601 or the type of crime it plainly addresses. As we have noted, § 666's legislative history specifically identifies the weaknesses of particular theft and bribery statutes that Congress intended to remedy by enacting § 666. The omission of any mention of § 601 in that legislative history is further evidence that § 666 is addressed to a separate and distinct category of criminal activity. If Congress had intended when enacting § 666 to increase tenfold the penalty for activity already covered by § 601, we believe the legislative history would refer to § 601 and its relationship to the new statute just as the legislative history refers to §§ 641, 645 and 201 and their relationship to the new statute.

### V.

Criminal statutes, like § 666, must be construed narrowly. Congress enacted § 666 to remedy specific deficiencies in existing federal theft and bribery statutes. When it did so, Congress made no suggestion that § 666 was also designed to supplement § 601. Rather, Congress intended § 666 to address different and more serious criminal activity. We find that the district court correctly concluded that Congress did not intend § 666 to cover actions plainly prohibited by § 601.

■ After the jury returned a guilty verdict, the district court entered what purported to be an "Order of Acquittal." An order of acquittal, however, is appropriate only where the court finds "the evidence is insufficient to sustain a conviction...." Fed.R.Crim.P. 29. Here, however, the district court ruled as a matter of law that two counts of the indictment were inappropriate. We agree with that ruling. Therefore, we will vacate the district court's

---

**3.** Count 12 also charged Cicco and Tabbachino with violating § 601. The district court granted Tabbachino's motion for acquittal with respect to count 12. Cicco's motion was denied and the jury found him guilty.

order and remand with instructions to enter an order under Fed.R.Crim.P. 12(b) dismissing counts four and five of the indictment.