967 P.2d 674

**STATE of Hawai'i, Plaintiff–Appellant,**

v.

**Darick MARKOWSKI, Defendant– Appellee.**

**No. 20183.**

Intermediate Court of Appeals of Hawai'i.

Sept. 14, 1998.

---

James M. Anderson, Deputy Prosecuting Attorney, City and County of Honolulu, on the brief for plaintiff-appellant.

Rose Anne Fletcher, Deputy Public Defender, on the brief, Kaneohe, for defendant-appellee.

BURNS, C.J., and WATANABE and ACOBA, JJ.

ACOBA, J.

We hold that the judgment of acquittal entered by the first circuit court (the court) on three counts of terroristic threatening in the first degree, Hawai'i Revised Statutes (HRS) § 707–716(1)(d) (1993), in a complaint filed against Defendant–Appellee Darick R. Markowski (Defendant), did not actually resolve some or all of the factual elements of the counts affected, and, therefore, was not a true acquittal. Thus, Defendant–Appellant State of Hawai'i (the State) could properly appeal from the findings of fact, conclusions of law, and the order which dismissed the same charges but were entered subsequent to the judgment of acquittal.

We sustain the State's appeal and hold that terroristic threatening in the first degree with the use of a "dangerous instrument" may be charged under HRS § 707–716(1)(d) even if it is alleged the threat was "to cause serious damage to *property* of another." HRS § 707–715(1) (1993) (emphasis added). While a dangerous instrument is described in HRS § 707–700 (1993) in terms of its harmful effect on persons, the literal language of the definition, a pari materia reading of HRS § 707–716(1)(d) and HRS § 707–715, which defines terroristic threatening, and the legislative history of these statutes, convince us that the term dangerous instrument is to be construed in terms of its *potential* for harm to persons. Accordingly, the use of a dangerous instrument may be charged where one purportedly intends to terrorize or recklessly disregards the risk of terrorizing another person by threatening to cause serious damage to property.

## I.

On the morning of December 20, 1995, Defendant sought to enter the home of his mother and stepfather, Norene and Romando Pascual. At the time, Defendant's older brother, Richard Markowski (Richard), Richard's wife, Debbie Markowski (Debbie), and their daughter lived with the Pascuals. That morning, all were at home with the exception of Romando.

Although Defendant was initially calm, he began to yell and scream outside the front door of the home. He pounded on the door, and threatened to kill everyone in the house if they would not let him enter. Two or three months earlier, Defendant had been told he was not welcome there.

Richard became alarmed at Defendant's actions and called the police. Officer Eric Ochoco, who answered the call, told Defendant that the family requested that he leave, and Defendant did so. The officer also left shortly thereafter.

However, Defendant returned "a few minutes or so" later, pounded on the door, and again yelling and screaming, threatened to vandalize the house and kill everyone inside. The people in the house then decided to leave by way of the garage. Richard, Debbie, and their daughter left through a kitchen door and got into their car. As Richard backed the car out of the garage, Defendant walked past him and into the garage.

Richard stopped in the driveway "to see what was going to happen." Norene, who was "trying to make [Defendant] leave", grabbed Defendant's hand to "force him out." During this interaction with his mother, Defendant picked up a garden pickaxe. Defendant then started walking towards his brother's car, and according to Mrs. Pascual, repeated that he was going to "bust Richard's car." Richard, Debbie, and their child were inside the car at that time.

Facing Defendant, Norene took a hold of the pickaxe with both of her hands and told Defendant, "You cannot hurt nobody, you not going hurt nobody." When she and Defendant reached the front of Richard's car, Richard exited his car and helped his mother. Richard and Norene were subsequently successful in pulling the pickaxe from Defendant's hands.

II.

A.

In a complaint filed by the State on January 4, 1996, Defendant was charged with four counts of Terroristic Threatening in the First Degree in violation of HRS §§ 707–716(1)(a) and (d).[1]

In relevant part, HRS § 707–715(1) defines terroristic threatening as follows:

**Terroristic threatening, defined.** A person commits the offense of terroristic threatening if the person threatens, by word or conduct, to cause bodily injury to another person or *serious damage to property of another* or to commit a felony: (1) With the intent to terrorize, or in reckless disregard of the risk of terrorizing, another person[.]

(Emphasis added.)

HRS § 707–716, which describes terroristic threatening in the first degree, provides in subsections (1)(a) and (d) as follows:

**Terroristic threatening in the first degree.** (1) A person commits the offense of terroristic threatening in the first degree if the person commits terroristic threatening:

(a) By threatening another person on more than one occasion for the same or a similar purpose; or

. . . .

(d) With the use of a *dangerous instrument.*

(2) Terroristic threatening in the first degree is a class C felony.

(Emphasis added.)

HRS § 707–700, which defines dangerous instrument, provides, in relevant part:

**Definitions of terms in this chapter.** In this chapter, unless a different meaning plainly is required:

. . . .

"Dangerous instrument" means any firearm, whether loaded or not, and whether operable or not, or other weapon, device, instrument, material, or substance, whether animate or inanimate, *which in the manner it is used or is intended to be used is known to be capable of producing death or serious bodily injury.*

(Emphasis added.)

B.

The jury trial in this case began on August 14, 1996. After the State rested its case, defense counsel moved for a judgment of acquittal on the grounds that the State (1) had not established a prima facie case under Count I with regard to Debbie Markowski,[2] and (2) had defectively charged the case under Counts II–IV because these counts alleged Defendant threatened serious damage to property with a dangerous instrument. Defense counsel argued that since the definition of "dangerous instrument" under HRS § 707–700 referred to any "instrument . . . which in the manner it is used or it is intended to be used is known to be capable of

1. The complaint charged as follows:

> *COUNT I:* On or about the 20th day of December, 1995, in the City and County of Honolulu, State of [Hawai'i], DARICK R. MARKOWSKI threatened, by word or conduct to cause bodily injury to Richard Markowski, Debbie Markowski, and Norene Pascual *by threatening Richard Markowski, Debbie Markowski, and Norene Pascual on more than one occasion for the same or similar purpose, in reckless disregard of the risk of terrorizing said Richard Markowski, Debbie Markowski, and Norene Pascual* thereby committing the offense of Terroristic Threatening in the First Degree, *in violation of Section 707–716(1)(a) [ (1993) ] of the [Hawai'i] Revised Statutes* [ (HRS) ].
>
> *COUNT II:* On or about the 20th day of December, 1995, in the City and County of Honolulu, State of [Hawai'i], DARICK R.

MARKOWSKI threatened, by word or conduct to *cause serious damage to property of Richard Markowski, with the use of a dangerous instrument, in reckless disregard of the risk of terrorizing said Richard Markowski,* thereby committing the offense of Terroristic Threatening in the First Degree, *in violation of Section 707–716(1)(d) [ (1993) ] of the [HRS].*
(Emphases added.)
Counts III and IV are substantively identical to Count II with the names of Debbie Markowski and Norene Pascual, respectively, substituted for that of Richard Markowski in the clause charging "reckless disregard of the risk of terrorizing [the named person]."

2. The court denied the motion with respect to Debbie Markowski. However, as later noted in the text, the jury acquitted Defendant–Appellee Darick R. Markowski (Defendant) of Count I.

producing death or serious bodily injury[,]" the State could not properly charge a dangerous instrument was used to threaten serious damage to property. Rather, according to defense counsel, the dangerous instrument circumstance set forth in HRS § 707–716(1)(d) could only be alleged where the instrument was used against a person.

In opposition, the State asserted that the challenge to Counts II–IV should have been brought as a Hawaiʻi Rules of Penal Procedure (HRPP) Rule 12(b) pre-trial motion, not as a motion for judgment of acquittal at the conclusion of the State's case-in-chief. As to the merits of defense counsel's contention, the State explained that HRS §§ 707–715 and –716 "go hand in hand"; HRS § 707–715 defining terroristic threatening and HRS § 707–716 enumerating the aggravating situations which raise the offense to first degree status.

### C.

The court took the arguments under advisement and allowed counsel to file supplemental memoranda on the issues. Following the filing of the memoranda, the court reconvened on August 22, 1996. After listening to argument, the court stated, "[W]ith respect to Counts II, III, and IV, basically I am inclined to agree with the defense and grant it." The State requested that the court express "in terms of the law" the basis for dismissing the three counts. The court responded, "It's an inconsistency as far as the definition is concerned" since "[t]he definition of a dangerous instrument is that it results in death or serious bodily injury." The court did observe that "in this case also, you know, there's some question of what ... [D]efendant did with the axe. He says a lot of things, but the mother goes right up and stops him." However, the court affirmed that its ruling was based on the manner in which Defendant was charged:

> [PROSECUTOR]: Okay, but, again just to clarify, the Court's ruling was based on what the Court believes to be improper

charging; correct? In other words, the Court would have preferred—

THE COURT: What I'm saying the charge of—

[PROSECUTOR]:—isn't—

THE COURT:—dangerous instrument—

[PROSECUTOR]: *The Court would have preferred had we charged the section charging the defendant with causing bodily injury to people not serious damage to property?*

THE COURT: *I think that would have qualified it.*

[PROSECUTOR]: Okay.

THE COURT: Or if it had been other than a dangerous instrument.

[PROSECUTOR]: Okay, I understand.

THE COURT: One of the other reasons—

[PROSECUTOR]: I think it's clear.

THE COURT:—that would clarify—

[PROSECUTOR]: We disagree. I just wanted to get the basis for the Court's ruling more clear.

(Emphases added.)

Defense counsel then rested her case. The jury returned a verdict of not guilty on Count I, the remaining charge brought under HRS § 707–716(1)(a), for terroristic threatening in the first degree.

### D.

The court filed a "Judgment of Acquittal [as to Counts I–IV] and Notice of Entry [as to the judgment]" on August 23, 1996 (the judgment of acquittal). Despite having filed the judgment of acquittal with respect to Counts I–IV, the court, on September 27, 1996, filed "Findings of Fact, Conclusions of Law, and Order Granting Defendant's Motion to Dismiss Counts II, III, and IV of the Complaint" (the findings, conclusions, and order).[3] The findings and conclusions provided, in relevant part:

> 3. *The charging is legally incorrect* because [Counts II, III, and IV of the Com-

---

3. The "Findings of Fact, Conclusions of Law, and Order Granting Defendant's Motion to Dismiss Counts II, III, and IV of the Complaint"

(findings, conclusions, and order) were apparently prepared by Plaintiff–Appellant State of Hawaiʻi (the State).

plaint] alleged that Defendant "threatened, by word or conduct to cause serious damage to property of Richard Markowski, with the use of a dangerous instrument, in reckless disregard of the risk of terrorizing said [victim], thereby committing the offense of Terroristic Threatening in the First Degree, in violation of Section 707–716(1)(d) of the [HRS].

4. It is legally incorrect for the State to have charged that Defendant threatened property with the use of a["]dangerous instrument" because, by definition, pursuant to Section 707–700 of the [HRS], "dangerous instrument" is defined, in pertinent part, as [something] "which in the manner it is used or is intended to be used is known to be capable of producing death or serious bodily injury." *In other words, [a] dangerous instrument is not defined as [something] which can cause damage to property.*

5. In order to have correctly charged Defendant's conduct with the use of a dangerous instrument [with] respect to Counts II, III, and IV, the State should have alleged that Defendant threatened, by word or conduct, to cause bodily injury to the named victims. *Again, it is incongruous and legally incorrect to allege that Defendant threatened to cause serious damage to property with use of a dangerous instrument, in light of the statutory definition of dangerous instrument.*

(Emphases added.)

As set forth above, the court's decision was based on its interpretation of HRS §§ 707–700 and –716(1)(d). The findings, conclusions, and order did not refer to any insufficiency of evidence in the State's case or any failure of the State to present a prima facie case with respect to any person alleged to

have been terrorized. The State, on October 11, 1996, appealed from the findings, conclusions, and order.

### III.

#### A.

■ As Defendant correctly notes, " '[t]he right of appeal in a criminal case is purely statutory and exists only when given by some constitutional or statutory provision.' " *Grattafiori v. State,* 79 Hawai'i 10, 13, 897 P.2d 937, 940 (1995) (quoting *State v. Dannenberg,* 74 Haw. 75, 78, 837 P.2d 776, 778, *reconsideration denied,* 843 P.2d 144 (1992)). The State relies on HRS §§ 641–13(1) and (2) (1993) as the statutory basis for this court's jurisdiction to hear its appeal. Those sections provide:

**By State in criminal cases.** An appeal may be taken by and on behalf of the State from the district or circuit courts ... in all criminal cases, in the following instances:

(1) *From an order* or judgment quashing, setting aside, or *sustaining a motion to dismiss, any* indictment or *complaint or any count thereof;*

(2) From an order or judgment, sustaining a special plea in bar, or dismissing the case where the defendant had not been put in jeopardy[.]

(Emphases added.)

Because the State has appealed the order "sustaining" Defendant's motion to dismiss Counts II–IV of the complaint, it appears we have jurisdiction under HRS § 641–13(1) to consider the State's appeal.[4] Therefore, we cannot agree with Defendant's contention that the appeal is not authorized by statute as is required by Hawai'i Rules of Appellate Procedure Rule 4(b).[5]

---

4. Ostensibly, HRS § 641–13(2) (1993) would not apply to the instant case because that provision only extends to instances where jeopardy has not attached. "[J]eopardy 'attaches' in jury trials when the jury is empaneled and sworn[.]" *State v. Wells,* 78 Hawai'i 373, 376, 894 P.2d 70, 73, *reconsideration denied,* 78 Hawai'i 474, 896 P.2d 930 (1995) (citing *State v. Moriwake,* 65 Haw. 47, 51, 647 P.2d 705, 709 (1982)). Because the motion for judgment of acquittal occurred after the State presented its case-in-chief, jeopardy would appear to have attached.

5. Hawai'i Rules of Appellate Procedure Rule 4(b) provides, in relevant part:

*When an appeal by the government is authorized by statute,* the notice of appeal shall be filed in the circuit or district court appealed from within 30 days after the entry of the judgment or order appealed from. A judgment or order is entered within the meaning of this subdivision when it is filed with the clerk of the court. (Emphasis added.)

Defendant further asserts that (1) the State may not appeal a judgment of acquittal where no guilty verdict was rendered in the matter;[6] (2) the allowance of an appeal would violate Defendant's right against double jeopardy; (3) the judgment of acquittal was final because the State failed to amend, correct, or set it aside; and (4) because the judgment of acquittal was not corrected, set aside, or superseded, it was the judgment from which the State was required to appeal.

### B.

We agree with Defendant that the effect of HRS § 641–13(9) (1993) is to bar the State from appealing a judgment of acquittal where *no guilty verdict was rendered in the* case. But, " 'what constitutes an "acquittal" is not to be controlled by the form of the judge's action.' " *State v. Dow*, 72 Haw. 56, 64, 806 P.2d 402, 406 (1991) (where the trial court entered a judgment of acquittal on one count, which was only one method of proving a driving under the influence of intoxicating liquor offense, judgment of acquittal was in form only and not in substance; therefore, defendant was not placed in jeopardy for the same offense when retried on second count charging the other method of proving such an offense) (quoting *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977)).

HRPP Rule 29(a) provides that an acquittal may be entered "where the evidence is insufficient to sustain a conviction[.]" Thus, HRPP Rule 29, which is patterned on Federal Rules of Criminal Procedure (FRCP) Rule 29, "empowers the trial judge to order the entry of a judgment of acquittal of one or more offenses (or counts) charged in the indictment if the evidence is insufficient to sustain a conviction." 26 D. Coquillete, S. Schreiber, G. Joseph, J. Solovy, & G. Vairo, *Moore's Federal Practice*, § 629.02, at 629–7 (3d ed.1997) [hereinafter *Moore's* ] (internal quotation marks and footnote omitted). But, "[a] defendant is acquitted only when 'the ruling of the judge, whatever its label, actual-ly represents a resolution [in defendant's favor], correct or not, of *some* or all of the *factual elements of the offense charged.*' " *Dow*, 72 Haw. at 65, 806 P.2d at 407 (quoting *Martin Linen*, 430 U.S. at 571, 97 S.Ct. 1349) (boldfaced and italicized emphasis and brackets in original) (underscored emphasis added).

While defense counsel arguably made some reference to the facts of the case, her essential argument was that Defendant was incorrectly charged under the statutory language. At the August 22, 1996 hearing, the court stated that its granting of the acquittal judgment was based on "the definition of a dangerous instrument." When pressed by the prosecutor, the court confirmed that "the charges [were] . . . not proper." Although the court did refer to "some question of what [Defendant] did with the axe," its written order indicated the acquittal motion as to the affected counts was granted because the charges were "legally incorrect."

■ Hence, it is evident the court made no factual determination as to some or all of the elements. charged, but grounded its ruling on the conclusion that the charges in Counts II–IV were, as a matter of law, defective. Under these circumstances, we believe the judgment of acquittal was one "in form only and not in substance." *Dow*, 72 Haw. at 66, 806 P.2d at 407. Therefore, HRS § 641–13(9) does not preclude this court's jurisdiction over the State's appeal.

### C.

■ Defendant also argues that the prohibition against double jeopardy bars a retrial on Counts II–IV. The prohibition, however, would not apply where Defendant successfully mounts a motion to dismiss as to those counts. "Although jeopardy 'attaches' in jury trials when the jury is empaneled and sworn, dismissal of a charge after jeopardy attaches does not always bar further prosecution on the same charge." *State v. Wells*, 78 Hawai'i 373, 376–77, 894 P.2d 70, 73–74,

---

6. HRS § 641–13(9) (1993) provides, in relevant part, that "[a]n appeal may be taken by and on behalf of the State from the district or circuit courts to the supreme court, subject to chapter 602, in all criminal cases, . . . from a judgment of acquittal *[f]ollowing a jury verdict of guilty.*" (Emphasis added.)

*reconsideration denied,* 78 Hawai'i 474, 896 P.2d 930 (1995) (internal quotation marks and citations omitted).

In a situation " 'where the defendant himself seeks to have the trial terminated without any submission to either the judge or the jury as to his guilt or innocence, an appeal by the government from his successful effort to do so is not barred[.]' " *Id.* at 377, 894 P.2d at 74 (quoting *United States v. Scott,* 437 U.S. 82, 100–01, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978)). In *Wells,* the defendant argued that the double jeopardy clause barred the State's appeal under HRS § 641–13. There, the supreme court examined the legislative history of HRS § 641–13 and concluded that it was consistent with the aforementioned holding in *Scott:*

> "There are many good reasons why a decision in favor of a defendant in a criminal case upon a question of fact, or on the guilt or innocence of a defendant should not be reviewed, but *there is no good reason why a person charged with a crime should be permitted to escape simply because a trial judge has erred on a pure question of law.*"

*Id.* (quoting Sen. Jud. Com. Rep. No. 35, in 1911 Senate Journal, at 309–10) (emphasis in original). Similarly, the Judiciary Committee of the House of Representatives indicated HRS § 641–13 would " 'permit the Government and the people to obtain from the Supreme Court decisions on questions of [c]riminal [l]aw, bearing on pleadings and the validity of statutes.' " *Id.* at 378, 894 P.2d at 75 (quoting Hse. Jud. Com. Rep. No. 35, in 1911 House Journal, at 389) (emphasis omitted).

Since Defendant's acquittal motion was based on the pleadings and the statutory interpretation of the terroristic threatening provisions, the judgment of acquittal as to Counts II–IV did not "actually represent[ ] a resolution in [D]efendant's favor, correct or not, of some or all of the factual elements of the offense charged." *Dow,* 72 Haw. at 65, 806 P.2d at 407 (internal quotation marks, emphasis, and brackets omitted). Rather, Defendant's motion was in the nature of a motion to dismiss based "on defects in the charge[s]." HRPP Rule 12(b)(2). *See* discussion *infra.*

*United States v. Neal,* 93 F.3d 219 (6th Cir.1996), *cert. denied,* — U.S. ——, 117 S.Ct. 957, 136 L.Ed.2d 843 (1997), is analogous. In that case, the defendant, Neal, was charged with failure to file tax returns on behalf of a corporation. At the close of the government's case, Neal moved for acquittal based on legal and factual arguments. *Id.* at 222. The lower court dismissed the indictment based exclusively on the legal ground raised by Neal. *Id.* at 221. The government appealed. *Id.*

On appeal, Neal argued that the double jeopardy clause barred the government's appeal. *Id.* The government responded that the dismissal was based on a purely legal theory, and thus the appeal did not place Neal in further jeopardy. *Id.* Citing *Scott,* the court observed, "The [United States] Supreme Court has held that in criminal cases, post-attachment [of jeopardy] appeals are generally available to the government when dismissal rests on a ruling of law sought by the defendant, unmixed with any factual basis for dismissal." *Id.*

The court noted that although Neal's motion for "acquittal" contained both a "legal and factual claim[,]" the lower court "ultimately dismissed the indictment on the purely legal ground that there was no underlying duty" on Neal to file certain tax forms. *Id.* at 222. Accordingly, the court determined that "[t]he fact that legal and factual arguments are raised in the same motion should not bar appellate review of dismissal as long as the [lower] court confines itself to the legal issue." *Id.* The court therefore addressed the merits of the government's arguments on appeal, "[b]ecause there was no fact-based acquittal, and [hence] double jeopardy [did] not bar the government's appeal." *Id.*

Similarly, we do not believe that Defendant would be subjected to double jeopardy if he were retried since the purported judgment of acquittal in this case was "unrelated to [the] factual guilt or innocence" of Defendant and was solely based on a question of law. *See Scott,* 437 U.S. at 100–01, 98 S.Ct. 2187.

## D.

Defendant further urges that because the judgment of acquittal had not been corrected, set aside, or superseded, the State should have appealed from it and not the findings, conclusions, and order. Hence, Defendant asserts, the State's appeal was untimely.

■ While we agree that the State should have moved to set aside the judgment of acquittal, in light of the subsequent findings, conclusions, and order which were filed, we do not deem the State's failure to do so as fatal to its appeal. In our view, as previously stated, the acquittal motion was essentially a motion to dismiss. Although the close of the evidence on either side is "an appropriate juncture to entertain the motion for [judgment of] acquittal," *State v. Lincoln,* 72 Haw. 480, 484, 825 P.2d 64, 67, *reconsideration denied,* 72 Haw. 616, 829 P.2d 859, *cert. denied,* 506 U.S. 846, 113 S.Ct. 137, 121 L.Ed.2d 90 (1992), it is not an appropriate juncture to entertain a motion to dismiss required to be brought under HRPP Rule 12. *See United States v. Oldfield,* 859 F.2d 392, 396–98 (6th Cir.1988) (claim that defendant's conduct as alleged in indictment was covered by a criminal statute other than that cited in the indictment was not a claim that indictment did not state offense, but, rather, a claim based on defects in the charges and thus must have been raised prior to trial).

### 1.

■ A motion for dismissal based on defects in the charges falls within the definition of a pre-trial motion as set out in HRPP Rule 12(b)(2).[7] Accordingly, "defenses and objections based on defects in either the institution of the prosecution or the indictment or information" should be raised before trial. *See* 24 *Moore's, supra,* § 612.05[2], at 612–16 (footnotes omitted).[8]

■ Under HRPP Rule 12(c) "[p]re-trial motions ... must be made within [twenty-one] days after arraignment unless the court otherwise directs." HRPP Rule 10 defines "arraignment" as the court proceeding during which the court "read[s] the charge to the defendant or stat[es] to him the substance of the charge and call[s] on him to plead thereto." HRPP Rule 12(f) provides that

> [f]ailure by a party to raise defenses or objections or to make requests which must be made prior to trial, within the time set by the court pursuant to section (c), or within any extension thereof made by the court, shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver.

Hence, failure to bring a HRPP Rule 12(b)(2) motion before trial, within the time prescribed by HRPP Rule 12(c), or any extension thereof, ordinarily results in a waiver of that defense or objection. *See* 1 C. Wright, *Federal Practice & Procedure: Criminal* § 193, at 697 (2d ed.1982).

Here, the arraignment of Defendant was held on January 16, 1996. Defendant, therefore, had twenty-one days from the date of the arraignment to bring a motion to dismiss under HRPP Rule 12(b)(2). According to the record, the court did not grant an extension of time for the filing of such a motion. Therefore, it appears that Defendant waived

---

7. Hawai'i Rules of Penal Procedure (HRPP) Rule 12(b)(2) states, in relevant part:

 (b) **Pretrial Motions.** Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion. Motions may be written or oral at the discretion of the judge. *The following must be raised prior to trial:*

 . . . .

 (2) *defenses and objections based on defects in the charge* (other than that it fails to show jurisdiction in the court or to charge an offense which objections shall be noticed by the court at any time during the pendency of the proceedings);

(Emphases added.)

 In its answering brief, Defendant "submits that the charges in Counts II–IV were defective." Defendant thus does not maintain the charges "fail[ed] ... to charge an offense." If the latter were the case, the objection could be raised "at any time during the pendency of the proceedings." *State v. Merino,* 81 Hawai'i 198, 212, 915 P.2d 672, 686 (1996).

8. HRPP Rule 12 tracks the language of Federal Rules of Criminal Procedure Rule 12, and interpretations of the federal rule aid us in determining the application of the HRPP.

any defenses and objections under HRPP Rule 12(b)(2).

However, it is clear from HRPP Rule 12(f) that the court may grant a party relief from the waiver "for cause shown." *See Oldfield,* 859 F.2d at 397. "The trial court's decision to grant or deny relief will not be overturned absent a showing of abuse of discretion." 24 *Moore's, supra,* § 612.06 at 612–27 (footnote omitted).

During the hearing on Defendant's acquittal motion, the State objected to Defendant's motion as one under HRPP Rule 12(b)(2). However, the court replied, "[T]he court should make rulings whenever it's [sic] brought to their [sic] attention," and proceeded to hear arguments on Defendant's motion. The court further remarked, "But why wasn't this brought in the early part and so we need to come all the way thus far [sic], when if [the HRPP Rule 12(b)(2) motion is] proper, [the complaint] should have been dismissed a long time ago?"

■ The State has not raised the issue of whether or not the court erred in hearing Defendant's motion because it was in actuality a HRPP Rule 12(b)(2) motion. Apparently, however, the court believed that Defendant would be unfairly prejudiced by a refusal to hear his motion.[9] Under the circumstances, we do not believe it abused its discretion in ruling on Defendant's putative HRPP Rule 12(b)(2) motion and, accordingly, we address the merits raised by Defendant's arguments.

### 2.

Plainly, the State may appeal from "an order ... sustaining a motion to dismiss," and thus properly did so herein. HRS § 641–13(1). We have indicated that the judgment of acquittal was one in form only and did not constitute a true acquittal.

Thus, to hold that the State should have appealed from the judgment of acquittal would be to elevate form over substance, a course eschewed by the Hawai'i Supreme Court. *Dow,* 72 Haw. at 64, 806 P.2d at 406.

We find support for our conclusion in *United States v. Cicco,* 938 F.2d 441, 446 (3rd. Cir.1991), which addressed the appropriateness of a trial court's entry of an "Order of Acquittal." Following a jury trial convicting the defendants of several counts, the trial court dismissed the indictment as to two counts, holding that the relevant statute was ambiguous as a matter of law. *Id.* at 446.

On appeal, the court observed that an order of acquittal is "appropriate only where the court finds 'the evidence is insufficient to sustain a conviction ...,' " *id.* (citing FRCP Rule 29), but that "the district court [had] ruled as a matter of law that the two counts of the indictment were inappropriate." *Id.* Thus, while the appellate court agreed with the district court's dismissal of the two counts, it vacated the "Order of Acquittal" and remanded with instructions to enter an order under FRCP Rule 12(b) dismissing the offensive counts. *Id.* at 445–46. The instant case is analogous except the court here ultimately did enter the appropriate order.

■ Under the circumstances of this case, we believe the State could appeal from the findings, conclusions, and order which were correctly entered. Although the findings, conclusions, and order were not entered until September 27, 1996, the delay itself appears to be harmless.[10]

### IV.

■ Moving to the court's conclusions that Counts II, III, and IV were "legally incorrect," we review the circuit court's conclusions of law under the right/wrong standard.

9. One reason for waiver sometimes cited is "ineffective assistance of counsel." 24 D. Coquillette, S. Schreiber, G. Joseph, J. Solovy, & G. Vairo, *Moore's Federal Practice,* § 612.06, at 612–31 n. 8 (3d ed.1997).

10. Defendant further maintains that the filing of the findings, conclusion, and order was an impermissible collateral attack upon the judgment

of acquittal. Because "an 'acquittal' is not to be controlled by the form of the judge's action," as previously mentioned, Defendant was never in fact "acquitted." *State v. Dow,* 72 Haw. 56, 64, 806 P.2d 402, 406 (1991) (citations omitted). Thus, the findings, conclusions, and order would not constitute a collateral attack on a judgment of acquittal.

*State v. Anderson,* 84 Hawai'i 462, 467, 935 P.2d 1007, 1012 (1997) (citing *State v. Pattioay,* 78 Hawai'i 455, 459, 896 P.2d 911, 915 (1995)).

### A.

Evaluation of the court's conclusions necessarily involves an interpretation of the terms "dangerous instrument" in HRS § 707–700, and "terroristic threatening" in HRS § 707–715, and the description of the first degree and second degree offenses of terroristic threatening in HRS §§ 707–716 and –717. "The interpretation of a statute is a question of law [which we decide] *de novo.*" *State v. Cornelio,* 84 Hawai'i 476, 483, 935 P.2d 1021, 1028 (1997) (internal quotation marks and citations omitted). In our review, we follow the rules of statutory construction enumerated in *Cornelio:*

> First, our foremost obligation *is to ascertain and give effect to the intention of the legislature, which is obtained primarily from the language contained in the statutes themselves.* Second, we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.
>
> In other words, the reason and spirit of the law, and the cause which induced the legislature to enact it, may be considered to discover its true meaning. Moreover, *laws in pari materia, or upon the same subject matter, shall be construed with reference to each other.* What is clear in one statute may be called in aid to explain what is doubtful in another.
>
> And third, the legislature is presumed not to intend an absurd result, and *legislation will be construed to avoid, if possible, inconsistency, contradiction, and illogicality.*

*Id.* at 484, 935 P.2d at 1029 (emphases added) (internal quotation marks, brackets, and citations omitted).

### B.

### 1.

██ We look, first, to the language of the statutes themselves. On its face, HRS § 707–15 contemplates that one may commit terroristic threatening of "another person" by threatening "to cause . . . serious damage to property of another." We find no obstacle, therefore, in concluding that a person who threatens to cause serious damage to property may be convicted of terroristic threatening.

In the legislative scheme, the offense of terroristic threatening is graded into two degrees.

Terroristic threatening in the first degree, a felony, is committed if certain aggravating circumstances accompany threatening words or conduct.

Terroristic threatening in the second degree, a misdemeanor, is a lesser offense which is committed if the threat is not accompanied by any of the aggravating circumstances denominated in HRS § 707–716. *See* HRS § 707–717 (1993).

The particular aggravating circumstance for the first degree charge here, as noted before, is the use of a dangerous instrument. *See* HRS § 707–716(1)(d).

### 2.

Because a dangerous instrument is defined as one "which in the manner it is used or is intended to be used is known to be capable of producing *death or serious bodily injury* [,]" HRS § 707–700 (emphasis added), a dangerous instrument is seemingly described in terms of its harmful effect on persons. "Death" and "serious bodily injury" defined in HRS § 707–700 as "serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ," are obviously related to offenses against *persons.* HRS chapter 707 (1993). But the words "*capable* of producing death or serious bodily injury," HRS § 707–700 (emphasis added), do not require that the instrument, in the manner used or intended to be used, *in fact* produces death or serious bodily injury. The potential for such harm is all that is literally required.

We have no doubt that in most cases a dangerous instrument will, as the court found, relate to cases involving the threat of "bodily injury." The terroristic threatening

statutes read in pari materia, however, do not appear to limit application of the dangerous instrument circumstance to such instances.

As previously mentioned, HRS § 707–715 indicates that terrorizing may be accomplished by threatening serious damage to property as well as by threatening bodily injury. HRS § 707–716(1)(d) states that, in one of its forms, terroristic threatening in the first degree is committed "[w]ith the use of a dangerous instrument." No language in HRS § 707–716 confines the dangerous instrument circumstance to a situation involving a person only. When read with reference to the definition of terroristic threatening in HRS § 707–715, HRS § 707–716(1)(d) expressly extends to threats to cause serious property damage.

### C.

Legislative history also supports our belief that the legislature intended the dangerous instrument circumstance to apply to all situations listed in HRS § 707–715, including that where the threat is to seriously damage property.

As originally enacted, the crime of terroristic threatening was punishable as a misdemeanor and except for the phrase "or to commit a felony," was defined in the same language as that currently set forth in HRS § 707–715.[11]

In 1979, the words "or to commit a felony" were joined in the definition of terroristic threatening and "two new sections (first and second degree of the offense) [were] added" to "reorganize[ ] the offense into two separate degrees." Sen. Stand. Comm. Rep. No. 902, in 1979 Senate Journal, at 1410. One of the purposes of the amendment was to make the use of a dangerous instrument in conjunction with a threat, a felony:

---

11. As originally enacted, HRS § 707–715 (1976) stated:

**Sec. 715 —Terroristic threatening.**
(1) A person commits the offense of terroristic threatening if he threatens, by word or conduct, to cause bodily injury to another person or serious damage to property of another:

[A] purpose of [the 1979 amendment was] to . . . (2) increase the severity of the [terroristic threatening] offense *from a misdemeanor to a Class C felony in three aggravated situations;* (a) a pattern of conduct involving the use of threats against one or more persons; (b) a threat made to a public servant; or (c) *when a dangerous instrument,* such as a firearm or explosive, is *used in connection with the threat.*

*Id.* (emphases added). The legislature implemented the last "aggravated" circumstance "[b]y replacing [in the bill] the phrase referring to a firearm, explosive, or dangerous weapon with the term 'dangerous instrument.'" *Id.* This change was adopted "because [the] term [dangerous instrument was already] precisely defined (section 707–700(4), [HRS]) for use in this chapter of the [Hawai'i Penal] Code." *Id.*

The legislature was aware of the penal code definition of terroristic threatening in HRS § 707–715, having amended it when it also incorporated the term dangerous instrument in HRS § 707–716(1)(d). Whatever seeming incongruity might exist in associating a dangerous instrument with property damage, in drafting HRS § 707–716(1)(d), the legislature expressly made the crime of terroristic threatening a felony "when a dangerous instrument . . . is used in connection with [a] threat" in the same bill which retained the definition of terroristic threatening as *inter alia* a threat "to cause . . . serious damage to property of another[.]"

Further, the legislative history may also be read as applying the dangerous instrument circumstance to all modes of terroristic threatening defined in HRS § 707–715, because the legislature was concerned that the proximity of such instruments would pose grave risks:

Your Committee feels that although words rather than actual physical harm are in-

(a) With the intent to terrorize, or in reckless disregard of the risk of terrorizing, another person; or
(b) With intent to cause, or in reckless disregard of the risk of causing evacuation of a building, place of assembly, or facility of public transportation.
(2) Terroristic threatening is a misdemeanor.

volved, the psychological trauma resulting from such threats and the possibility that harm may actually occur justifies criminal prosecution. *More severe penalties should be instituted when . . . dangerous weapons or explosives are used in connection therewith because the mere presence of a weapon in the possession of the offender is traumatic in itself and would present an imminent danger to the victim. There is a likelihood that in the event the victim resisted to the demands or threats of the offender, the offender may elect to utilize the weapon.*

Hse. Stand. Comm. Rep. No. 1382, in 1979 House Journal, at 1480 (emphases added). *See State v. Corpuz,* 10 Haw.App. 584, 591–92, 880 P.2d 213, 216–17, *cert. denied,* 77 Hawai'i 373, 884 P.2d 1149 (1994), quoting the above report.

### D.

 Reading the term dangerous instrument with reference to HRS §§ 707–715 and –716 and construing it in a manner consistent with the avowed purpose of the legislature, *Cornelio,* 84 Hawai'i at 483, 935 P.2d at 1029, we conclude one may be charged with a violation of HRS § 707–716(1)(d) when a dangerous instrument is employed in connection with a threat to property as proscribed by HRS § 707–715. Such a construction gives effect to the legislature's apparent intent in adopting HRS § 707–716(1)(d) and avoids "inconsistency, contradiction and illogicality" in the application of that section with HRS § 707–715. *Id.* at 484, 935 P.2d at 1029 (internal quotation marks and citations omitted). It is the possession of a dangerous instrument during the commission of terroristic threatening that the legislature determined to be an "aggravated situation[ ]" justifying the classification of the offense as a felony, and consequently, one in the first degree. As the legislature explained, "the mere presence of a [dangerous instrument] in the possession of the offender is traumatic in itself and would present an imminent danger to the victim[.]" Hse. Stand. Comm. Rep. No. 1382, in 1979 House Journal, at 1480.

### V.

For the foregoing reasons, the August 23, 1996 judgment of acquittal as to Counts II through IV, and the September 27, 1996 findings of fact, conclusions of law, and order granting Defendant's motion to dismiss counts II, III, and IV of the complaint are vacated, and the case remanded for a new trial on Counts II, III, and IV.